NATURAL RESOURCES DEFENSE COUNCIL, et al., Plaintiffs,

v.

Donald EVANS, et al., Defendants.

No. C 01–0421 JL.

United States District Court, N.D. California.

Oct. 27, 2003.

Andrew P. Caputo, Natural Resources Defense Council, San Francisco, CA, Stephen E. Roady, Eric A. Bilsky, Washington, DC, Monica B. Goldberg, for Plaintiffs.

Catherine R. Lewers, Mauricia M.M. Baca, Washington, DC, Charles O'Connor, San Francisco, CA, for defendants.

James P. Walsh, Davis Wright Tremaine, San Francisco, CA, for Amicus Curiae.

## ORDER

LARSON, United States Magistrate Judge.

Plaintiffs' motion for an order for deadlines came on for hearing before this Court on September 24, 2003. The parties had briefed the issues extensively and the Court was prepared to rule. At the conclusion of the hearing the parties expressed willingness to collaborate on drafting a proposed order for the Court's signature, to be submitted to the Court by October 8, 2003. The deadline passed, and counsel presented the Court with Plaintiffs' Proposed Order, Defendants' Objections to Plaintiffs' Proposed Order and Plaintiffs' Response to Defendants' Objections on Proposed Order.

The parties present two versions of the Order:

*Plaintiffs propose the following language:* (Plaintiffs modified their Proposed Order in response to Defendants' Objections—this is the modified version)

"This matter is before the Court on plaintiffs' motion for deadline to prepare rebuilding plans. Having considered

the parties' arguments presented in writing and at the September 24 hearing, the Court hereby rules as follows: Plaintiffs' motion is GRANTED. Consistent with the Magnuson–Stevens Act, Defendants shall: (1) Approve rebuilding plans for darkblotched rockfish, canary rockfish, lingcod and Pacific Ocean Perch by January 31, 2004; (2) Prepare, or cause to be prepared, rebuilding plans for bocaccio rockfish, cowcod, yelloweye rockfish, and widow rockfish by April 15, 2004; (3) Approve or adopt rebuilding plans for bocaccio rockfish, cowcod, yelloweye rockfish, and widow rockfish by September 15, 2004; and (4) Approve or adopt a rebuilding plan for Pacific whiting by November 30, 2004.

IT IS SO ORDERED." (Plaintiffs' Response at page 5, n. 4)

*Defendants propose the following language:*

"This matter is before the Court on Plaintiffs' Motion for Deadline to prepare rebuilding plans for overfished Pacific groundfish species. Having considered the Parties' arguments presented in writing and at the September 24 hearing, the Court hereby rules as follows: Plaintiffs' Motion is GRANTED.

Defendants shall take action pursuant to Section 304(a)(3) of the Magnuson–Stevens Fishery Conservation and Management Act ("Magnuson–Stevens Act") on rebuilding amendments for darkblotched rockfish, canary rockfish, lingcod, and Pacific Ocean perch by January 31, 1004.

Either the Pacific Fisheries Management Council or the National Marine Fisheries Services shall prepare rebuilding amendments for bocaccio rockfish, cowcod, yelloweye rockfish and widow rockfish by April 15, 2004. Defendants shall take action on these rebuilding amendments pursuant to either section 304(a)(3) or section 304(c) of the Magnuson–Stevens Act by September 15, 2004.

Defendants shall take action under either section 304(a)(3) or section 304(c) of the Magnuson–Stevens Act on a rebuilding amendment for Pacific whiting by November 30, 2004.

IT IS SO ORDERED." (Defendants' Objections at page 3)

The parties' proposed orders differ significantly. Defendants propose to "take action" on "rebuilding amendments" versus "prepare, cause to be prepared" and "approve or adopt" "rebuilding plans." This is inconsistent with what the Court and the parties discussed at the hearing. "Taking action" is so vague as to be meaningless. The statute requires that the rebuilding plans be completed and ready for implementation within a certain time frame, which is long past.

The Court also notes that Defendants in their Proposed Order expressly provide for participation by the Pacific Fisheries Management Council ("the Council") in the preparation and completion of the rebuilding plans. The Court finds that such participation is likely to contribute to significant additional delay, when Defendants are already out of compliance with the Congressionally-mandated deadlines. Accordingly, the NMFS alone should prepare and complete the rebuilding plans.

## LEGAL ANALYSIS

### The Statute Has a Deadline, which is Past

The deadline to prepare a rebuilding plan for the nine overfished species has passed. 16 U.S.C. § 1854(e)(3) of the Magnuson–Stevens Act ("MSA") requires that rebuilding plans be completed for overfished species within one year of their being identified as overfished. Some of the species were identified in March 1999

(bocaccio, lingcod and Pacific ocean perch), ("POP"), others in January 2000 (canary rockfish and cowcod), others in January 2001 (darkblotched rockfish and widow rockfish). None of these species has a rebuilding plan yet. In the meantime, two more overfished species have been identified, yelloweye rockfish (January 2002) and Pacific whiting (April 2002). *Natural Resources Defense Council v. Evans,* 243 F.Supp.2d 1046, 1054–1055 (N.D.Cal.2003)

Where the Secretary has so designated a fishery, measures must be taken to rebuild to a level consistent with producing the maximum sustainable yield (MSY), or suitable proxy, within a time period as short as possible but not exceeding ten (10) years. See 16 U.S.C. §§ 1802(28)(C), 1802(29), 1854(4), 1853(10).

In the case at bar, for the nine overfished species, there is not one completed rebuilding plan, despite the passage of the statutory deadline. The Court finds this delay unreasonable.

### NMFS Pleads Other Work and Insufficient Staff

NMFS cites other work as interfering with its compliance with the Court's order to prepare the rebuilding plans: *inter alia,* participation in and support of the September, November and March meetings of the Pacific Council, meetings of the Council's Groundfish Management Team, Allocation Committee, and Open Access Permitting Committee, and the interim and annual meetings of the International Pacific Halibut Commission (IPHC); inseason management of the four commercial Pacific whiting fisheries, inseason management of the seven recreational and three non-tribal commercial Pacific halibut fisheries; preparation and publication of inseason groundfish management measures likely to be developed at the September and November 2003 Council meetings; preparation of initial scoping documents for a license limitation program for the open access groundfish fisheries; reviewing and processing the DEIS and FEIS for the 2004 groundfish specifications and management measures, and other duties that will inevitably arise (de Reynier Decl. at ¶ 12 and Table 2).

The Court, on examining pages 9 and 10 of the de Reynier Declaration, sees many steps in the process which could be eliminated—relating to the "workload" issues. The Court could order elimination of the "scoping" hearings, in fact, elimination of the Council entirely would greatly speed the proceedings.

In addition to eliminating the Council from the process, NMFS has the option of diverting staff and resources or using outside contractors. A former NMFS official testified that the agency frequently shifts staff, resources and priorities to meet court-ordered deadlines. (Decl. Of Heather Weiner, Ex. I to Pltf. Reply at ¶ 6). NMFS effectively concedes this point when it admits that at least one EIS currently is being prepared by an outside contractor (de Reynier Decl. at p. 11— Programmatic Bycatch EIS "is being prepared and managed by a NMFS contractor").

■ In fact, in listing other work that might suffer were NMFS to divert resources on orders from this Court, Mr. Robinson describes some of the important tasks as "court-ordered." Plaintiffs reject this as an excuse. Congress has already decided that rebuilding plans are the highest of priorities, by mandating procedures and deadlines. Where "Congress has established a clear time frame for regulatory action, deferring to the agency [as to an alternative time frame] is inappropriate." *Sierra Club v. Thomas,* 658 F.Supp. 165, 171, n. 6 (N.D.Cal.1987).

## NMFS Would Not Have to Start from Scratch

Plaintiffs deny that NMFS is starting from scratch on the bocaccio or any other rebuilding plans. Plaintiffs point out that the NEPA and other analytic processes do not necessarily happen one after another, but can proceed simultaneously and parallel with preparation of the rebuilding plans. NMFS lists the M.S.A. § process and then states that "NEPA requires a separate process." (¶ 4 and 5 of Def. Opp.) In fact, NMFS neglects to mention that it had already performed many tasks for the rebuilding plans which will not have to be repeated: specifically the NEPA procedures, including publishing a notice of intent to prepare an EIS, and the scoping process.

NMFS has published two separate notices of intent to prepare a rebuilding plan EIS in April 2002 and in March 2003. Scoping has been underway since March 1999, when the first three species were identified as overfished. 67 Fed.Reg. at 18,577. The second notice convened a scoping meeting April 6, 2003. 68 Fed. Reg. at 12,889. One of the notices acknowledges that the rebuilding plans have "already been subject to a lengthy development process that has included early and meaningful opportunity for public participation ...". 67 Fed.Reg. at 18,577. NMFS is not starting from scratch.

In fact, NMFS is re-using the language from existing draft rebuilding plans in the new rebuilding plans. (See. Plaintiffs' Reply at Ex. D—excerpts from the EIS on the 2003 Pacific groundfish specifications and Ex. E—excerpts from the draft EIS on the first batch of Pacific groundfish rebuilding plans). The sections labeled "West Coast Marine Ecosystems" in each document (section 3.1.1) (pages 3–1 to 3–3) in Ex. D, and sections 3.1.2 (page 3–3 to 3–5) in Exhibit E, are virtually word-for-word identical. There are other examples.

NMFS cannot claim that it had to scrap all previous documents and start over. In fact, in Ex. D, at 4–61, NMFS admits that:

"Overfished species are currently managed under interim rebuilding plans, and it is not expected that final rebuilding plans will differ substantially, taking into account any changes that would be made to either type of plan as a result of new data on overfished stocks' parameters." (Ex. D, at 4–61)

## New Scientific Data No Excuse for Delay Current Specifications Not Adequate to Protect Fishery

Also, NMFS receipt of new scientific data is not an excuse for delay. Plaintiffs' expert, fishery biologist Dr. Mark Powell, explains in his second declaration (Ex. F to Plaintiffs' Reply) that "fishery management is always a moving target" because "[t]here is always new scientific data being compiled." (Second Powell Decl., Ex. F to Pltf. Reply at ¶ 16). In fact, the M.S.A. § requires NMFS to review and revise its rebuilding plans as necessary every two years. 16 U.S.C. § 1854(e)(7). Dr. Powell attests that NMFS currently "has sufficient data in its possession about the overfished species to prepare rebuilding plans without further delay." Powell Decl at ¶ 16.

NMFS contends that it is already managing the fishery under interim plans and that its management is adequate to protect the overfished species. It identifies three top management priorities: preventing overfishing, rebuilding overfished stocks, and minimizing incidental bycatch and discard of overfished and depleted stocks. 67 Fed.Reg. 10490, 1573 (March 7, 2002); 68 Fed.Reg. 11182 (March 7, 2003).

NMFS believes that Plaintiffs are ignoring unprecedented measures it has taken, some of which have severe effects on the fishing community. See 68 Fed.Reg. 936, 961 (January 7, 2003). These include:

depth-based fishery closures instituted in September 2002 to protect darkblotched rockfish, 67 Fed.Reg. 57973–57981 (September 13, 2002); depth-based management in 2003, with large closed areas that prevent vessels from operating in areas where overfished species are commonly found, 68 Fed.Reg. 936 (January 7, 2003); and management of Pacific whiting under the 40–10 harvest control rule, expected to achieve rebuilding within ten years. (De Reynier Decl. At ¶ 14). These actions represent progress but are no substitute for rebuilding plans for all nine overfished species.

The Regional Administrator, Mr. Robinson, discounts the testimony of Plaintiffs' expert, Dr. Powell, who says that bycatch and habitat damage are the main reasons that groundfish stocks have become overfished. Mr. Robinson says he is "unaware of any documented scientific studies on the West Coast that have demonstrated this conclusion relative to habitat damage." He does not claim to be unaware of any studies documenting the damage related to bycatch. 2d Supp. Robinson Decl. At ¶ 21.

Both Plaintiffs and the Court find Dr. Powell, a PhD biologist, far more persuasive on the question of priorities than Mr. Robinson, a non-scientist who holds bachelor's degrees. (Powell Decl., Ex. C to Pltf Motion ¶ 2; Robinson Decl., Ex. 1 to Def. Opp. To Pltf Mot. For Order on Remedy, filed Oct. 31, 2002 ¶ 2). Dr. Powell's views are set forth below as to why the current measures are inadequate and why rebuilding plans are necessary for the recovery of the fishery.

### The Current NMFS Schedule is Flawed, both Scientifically and Legally

### Congress Foresaw Council as Source of Delay

Plaintiffs claim that NMFS is wrong, both scientifically and legally, when it describes the current schedule as adequate to implement rebuilding of the fisheries.

### Scientific Flaws

Plaintiffs present the declaration of fishery biologist Dr. Mark Powell, who is deeply familiar with the Pacific groundfish fishery. In his First Declaration, at Ex. C to Plaintiffs' Motion, Dr. Powell explained why delays in the rebuilding plans put overfished species at a disadvantage and decrease the odds of successfully rebuilding the species in the shortest possible time. In his Second Declaration, at Ex. F to Plaintiffs' Reply, Dr. Powell observes that "[s]everal of the overfished Pacific groundfish species are very badly overfished. Bocaccio, for example, is at less than 10% of its unfished population level, which is a very serious population decline. Cowcod, another Pacific groundfish species, is so badly overfished that NMFS estimates it will take nearly 100 years to rebuild the species." *Id.* at ¶ 5.

While NMFS believes the interim measures it is taking now are adequate to protect the fishery, Dr. Powell disagrees and explains why. Although he concedes that some measures benefit the overfished species, most of them "do not go far enough to give the overfished species the protection they need" and "NMFS is wrong to claim that these protections are adequate." *Id.* at ¶ 6.

Specifically, the annual specifications are inadequate substitutes for rebuilding plans, because they are "a unique recovery map for an overfished species" that provide "a comprehensive analysis of all the reasons why [the species] is overfished and a comprehensive plan for addressing those causes so the species can rebuild." *Id.* at ¶ 9, 8.

In fact, according to Dr. Powell, the annual specifications can subtly undermine progress in rebuilding the overfished species, because it "is typically an ad hoc

creation of management measures that are hoped to achieve a target [fishing] catch level." *Id.,* ¶ 10. These measures are "a hodgepodge of regulatory protections with little coordination and little analysis that determines whether the overall harm caused by fishing (including habitat damage and juvenile bycatch) is being corrected adequately to allow rebuilding." *Id.* at ¶ 7, 12.

The existing rebuilding analyses also fail to substitute for rebuilding plans, because "they do not set out the affirmative protections that the species need in order to rebuild as quickly as possible," such as describing "what kinds of bycatch and habitat protections an overfished species needs in order to rebuild." *Id.* at ¶ 14.

In addition, NMFS fails to enforce even the interim specifications it purports to have in place. In recent years, several "critically overfished species," including bocaccio, have been harvested by fishermen at levels higher that permitted by NMFS' annual specification. *Id.* ¶ 15. NMFS apologizes and says that it has learned from this experience and redesigned its sampling and survey methods in order to do a better job of keeping the annual catch within its optimal yield (OY).

Plaintiffs see a logical conflict within the NMFS position. It argues on the one hand that it is doing everything that rebuilding plans could do. At the same time, it argues that it would be very onerous and time consuming to prepare rebuilding plans.

Either the rebuilding plans are already effectively in place, in which case all NMFS needs to do is formalize them, or there is much work to be done to develop rebuilding plans for the overfished species, in which case NMFS cannot claim to be doing everything it could.

### Legal Flaws

Congress mandated a schedule for preparing and completing a rebuilding plan.

See 16 U.S.C. § 1854(e)(5). NMFS cannot rewrite the statute because it feels it is doing the best it can. Congress considered rebuilding plans important enough to include a mandatory schedule. Congress also foresaw an inherent potential for delay in the Council process, so it built in a mechanism for NMFS to take over if the Council couldn't complete a plan on time.

### Congress Foresaw Councils as a Source of Delay

There is evidence in the legislative history of the M.S.A. § that Congress understood that the Councils could be a source of delay and accordingly provided that where a Council fails to prepare and complete a rebuilding plan in the statutorily mandated time period, the NMFS itself should take over and complete the plan within the mandated time:

"Significantly, Congress imposed the one-year time limit on fishery councils because of the perceived inability of fishery councils to quickly enact needed conservation measures. Indeed, Congress recognized that 'it actually took a lawsuit by two Massachusetts environmental groups to force the notoriously slow New England Fishery Management Council to draft and implement a fishery management plan that contained the teeth needed to stem continued overfishing and stock decimation.' See 142 Cong.Rec. S10906, 10910 (September 19, 1996) (statement of Sen. Chafee)." *A.M.L. Intern., Inc. v. Daley* 107 F.Supp.2d 90, 94 (D.Mass.,2000)

Plaintiffs quote Senator Stevens, the lead sponsor of the 1996 MSA: "If the fisheries management councils have allowed a fishery to become overfished, we want it to be stopped immediately." 142 Cong. Rec. S10810 (daily ed. Sept. 18, 1996) (statement of Sen. Stevens).

Senator Kerry, the bill's lead Democratic sponsor and co-floor-manager, made the same point when he stated: "We are pre-

cariously close to fisheries failure in many of our most commercially important fish stocks, and it is imperative that we take immediate action if we are to avert disasters such as the one that we are currently experiencing ... off the waters of New England." *Id.* at S10812 (statement of Sen. Kerry).

### Conclusion and Order

For all the above reasons, Plaintiffs' motion for deadline on rebuilding plans is GRANTED.

The Secretary is hereby given authority to prepare or cause to be prepared and approve or adopt rebuilding plans for the species listed in this order pursuant to 16 U.S.C. § 1854(c)(1)(C) of the Magnuson–Stevens Fishery Conservation and Management Act ("Magnuson–Stevens Act").

NMFS shall approve rebuilding plans pursuant to 16 U.S.C. § 1854(c) for dark-blotched rockfish, canary rockfish, lingcod, and Pacific Ocean perch by January 31, 2004.

NMFS shall prepare or cause to be prepared rebuilding plans for bocaccio rockfish, cowcod, yelloweye rockfish and widow rockfish by April 15, 2004. Defendants shall approve or adopt rebuilding plans for these species pursuant to 16 U.S.C. § 1854(c) of the Magnuson–Stevens Act by September 15, 2004.

NMFS shall approve or adopt a rebuilding plan pursuant to 16 U.S.C. § 1854(c) of the Magnuson–Stevens Act for Pacific whiting by November 30, 2004.

IT IS SO ORDERED.