**NATURAL RESOURCES DEFENSE COUNCIL, et al., Plaintiffs,**

v.

**Gary LOCKE, et al., Defendants.**

No. C 01–0421 JL.

United States District Court, N.D. California.

Feb. 14, 2011.

Eric A. Bilsky, Oceana Inc., Aaron Colangelo, Attorney at Law, Washington, DC, Selena Katherine Kyle, Natural Resources Defense Council, San Francisco, CA, for Plaintiffs.

Erik Edward Petersen, Kristen Byrnes Floom, U.S. Department of Justice, Washington, DC, for Defendants.

## ORDER AWARDING ATTORNEY FEES AND EXPENSES
### (Granting Docket # 349)

JAMES LARSON, United States Magistrate Judge.

### I. Introduction

Plaintiffs' motion for attorney fees and expenses (Docket # 349) under 28 U.S.C.

§ 2412, the Equal Access to Justice Act ("EAJA"), in the amount of $505,841.41, came on for hearing. Selena Kyle, Natural Resources Defense Council, appeared for Plaintiffs. Kristen Floom, U.S. Department of Justice, appeared for Defendants (by telephone). The Court carefully considered the moving and opposing pleadings and the arguments of counsel and hereby grants the motion. The Court concludes that Plaintiffs substantially prevailed, and finds also that each claim and issue NRDC lost is nevertheless closely related to a claim or issue on which the Court awarded relief to NRDC. The Court finds that Plaintiffs exercised billing judgment and did not bill for 1000 hours of the 2600 they worked. The Court finds that the attorneys for NRDC were uniquely qualified and could not have been retained at statutory EAJA rates and that the rates and hours charged were reasonable. Finally, the Court finds that Defendants' positions were not substantially justified.

NRDC achieved a victory for fishery conservation and a substantial part of the relief it sought in this case when this Court remanded the 2009–2010 Specifications for Pacific Coast groundfish for failure to apply the best available science and vacated the Specifications for three species for failing to rebuild those species in the shortest time possible. Defendants later voluntarily dismissed their appeal of this Court's order. This Court's April 2010 rulings compelled Defendants to revise their rebuilding scheme for the fishery. Defendants' litigation positions on the issues they lost were not substantially justified and often were directly contrary to Ninth Circuit precedent. NRDC is a prevailing party entitled to EAJA fees.

For its fee motion, NRDC excluded outright more than 1,000 of the more than 2,600 hours it spent on this case over the past half decade and applied an additional across-the-board cut of ten percent to the hours reasonably expended by its lead attorneys. Defendants now urge this Court to apply additional across-the-board cuts to NRDC's requested rates and claimed hours and to categorically deny recovery for work before Defendant National Marine Fisheries Service ("NMFS") that was essential and integral to NRDC's pursuit of its winning claims. These proposed reductions should be rejected as contrary to controlling case law on the scope of work compensable under EAJA. NRDC requests a revised EAJA award of $505,841.41. This revised figure accounts for NRDC's work on fee recovery and adjustments to NRDC's original fee claim, as explained below.

## II. Procedural Background

Plaintiff Natural Resources Defense Council ("NRDC") moves for an award of $528,087.43 in attorney's fees and expenses pursuant to the Equal Access to Justice Act ("EAJA."), 28 U.S.C. § 2412(d)(1)(A). This award would compensate NRDC for reasonable fees and expenses incurred over more than six years of work, culminating in this Court's April 2010 summary judgment and remedy orders, which invalidated substantial portions of Defendants' current harvest scheme for overfished Pacific Coast groundfish.

In June 2004, NRDC and Defendants reached, and this Court endorsed, a stipulated settlement of interim fees and expenses for work on this case through January 2004 and additional fees and expenses associated with pursuit of the interim award. See June 30, 2004 Joint Stipulation and Order of Settlement as to Attorneys' Fees and Expenses. Plaintiffs do not seek compensation for any fees or expenses covered by that settlement. Declaration of Selena Kyle ("Kyle Dec.") ¶ 10, 12. (Docket Nos. 103, 106)

■ Plaintiffs' motion is timely, in accordance with the statutory time frames established by EAJA, having been filed within 30 days of the Ninth Circuit's August 19, 2010 dismissal after Defendants voluntarily dismissed their appeal from this Court's April 2010 orders. *Id.* § 2412(d)(1)(B); Order, *NRDC v. Locke,* No. 10–16444 (9th Cir. Aug. 19, 2010), entered at Docket # 352.

NRDC filed this case in 2001 to compel Defendants to comply with the mandates of the Magnuson–Stevens Fishery Conservation and Management Act and related procedural statutes in regulating harvests of overfished Pacific Coast groundfish species. This case is the capstone in a series of NRDC lawsuits challenging Defendants' failure to rebuild overfished stocks within the fishery to healthy populations in accordance with Magnuson Act mandates. In its 2005 ruling in *Natural Resources Defense Council, Inc. v. National Marine Fisheries Service,* 421 F.3d 872 (9th Cir. 2005), the Ninth Circuit invalidated a rebuilding period for one of the same species at issue in this case, darkblotched rockfish, and recognized that Section 304(e)(4)(A)(i) of the Act strictly limits Defendants' discretion to delay rebuilding and increase harvests of overfished species to promote short-term economic gains in the fishery. The Ninth Circuit explained that "[t]he purpose of the Act is clearly to give conservation of fisheries priority over short-term economic interests." *Id.* at 879.

In its April 23, 2010 summary judgment order, this Court ruled that Defendants have continued to give undue weight to short-term economic concerns in establishing rebuilding periods and harvest levels for several critically depleted Pacific Coast groundfish species, in contravention of the Magnuson–Stevens Act and binding Ninth Circuit precedent. When Defendants approved the 2009–2010 harvest specifications and management measures (2009–2010 Specifications.) for Pacific Coast groundfish, the latest available stock assessments for cowcod, darkblotched rockfish, and yelloweye rockfish indicated that these species were considerably less abundant and recovering more slowly than Defendants had assumed in approving their 2007–2008 Specifications for these species. See April 23, 2010 Order, Dkt. No. 340, at 30–39. (Court's document pagination) Defendants responded to these less favorable stock assessments by maintaining or increasing allowable harvest levels and extending the projected time for each species to rebuild. *Id.*

Defendants' actions violated the Magnuson Act's mandate to rebuild each overfished species in the shortest time possible within the meaning of Section 304(e). *Id.* In its April summary judgment ruling, this Court noted that Defendants appeared to have done for darkblotched rockfish "exactly the same thing the court of appeals expressly disapproved in [*NRDC v. NMFS* ]—extend the rebuilding period and increase harvesting of a species because it is doing worse than previously thought .. " *Id.* at 31. The Court also faulted Defendants' decision to defer cowcod's rebuilding several decades past the earliest biologically possible date in order to maintain short-term harvests and increase associated short-term revenues in the fishery. *Id.* at 35 ("NMFS's decision to delay rebuilding the most depleted overfished species by more than a generation in exchange for a multimillion-dollar year-on-year increase in fishery revenue violates section 304(e)(4)(A)(i) .. "). The Court also invalidated Defendants' 2009–2010 Specifications for yelloweye rockfish, which deferred planned decreases in harvests and established a target rebuilding date of 2084 for the species. *Id.* at 39 (noting that "[y]elloweye is biologically capable of rebuilding by 2049, three and a half decades earlier than [Defendants']

current harvest levels for the species will allow .. ").

The Court's April 2010 summary judgment ruling also identified significant flaws in the economic analysis Defendants relied on to justify their harvest levels and rebuilding periods for all overfished Pacific Coast groundfish species. Specifically, the Court found that Defendants had unjustifiably relied on outdated economic information on port income in a way that likely exaggerated the short-term economic costs of faster rebuilding and further biased the 2009–2010 Specifications towards short-term harvest levels and revenue gains. *Id.* at 20–23. In so doing, Defendants violated their Magnuson Act obligation to base Specifications on the "best scientific information available" for the fishery. *Id.* at 18–23; 16 U.S.C. § 1851(a)(2).

The Court addressed these legal errors in an April 29, 2010 remedy order that vacated ·Defendants' 2009–2010 Specifications for darkblotched rockfish, yelloweye rockfish, and cowcod; remanded the 2009–2010 Specifications in their entirety; and directed Defendants to issue revised Specifications that are based on the best available scientific information and calculated to rebuild darkblotched, yelloweye, and cowcod in the shortest time possible. Dkt. No. 342 at 2. This remedy order granted a substantial portion of the relief sought in NRDC's Fifth Amended Complaint. See Fifth Amended Complaint, Dkt. No. 260, at 11–17.

### III. Analysis

### A. NRDC is entitled to an EAJA award because NRDC prevailed and Defendants' position was not substantially justified.

EAJA states:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addi-
tion to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

As an uncontested prevailing party in this case, see Dkt. No. 353 (Defs.' Opp'n) at 3 n. 1, NRDC is entitled to an award of reasonable fees and expenses under EAJA unless Defendants establish that their position was "substantially justified," 28 U.S.C. § 2412(d)(1)(A), meaning that it possessed "a reasonable basis in both law and fact." *U.S. v. Marolf,* 277 F.3d 1156, 1162 (9th Cir.2002) (citation omitted); Dkt. 349 at 6.

Defendants' position was not substantially justified. They do not dispute that their position on the central issue in this case—whether they are restoring overfished species in as short a time as possible—violated Ninth Circuit precedent for three of the seven species at issue in the most recent motions. See Dkt. No. 353 at 4–5. As this Court recognized, that precedent concerned the same statutory provision and one of the same species at issue here. See Dkt. 340 at 33 (describing Defendants' darkblotched action as "directly contrary to the court of appeals' ruling in *NRDC v. NMFS,* on virtually identical facts."). Defendants' disregard of controlling law on their rebuilding obligations is sufficient to demonstrate that their position was not substantially justified. *Li v. Keisler,* 505 F.3d 913, 919–920 (9th Cir. 2007) (agency's position not substantially justified if inconsistent with law that was "clearly established" at the time it acted);

*Citizens for Better Forestry v. U.S. Dep't of Agric.,* 2010 WL 3222183, *2 (N.D.Cal. Aug. 13, 2010) (*"Citizens I "*) ("It was not reasonable for the [agency] to base its [action] on a rejected legal theory. . . .").

Defendants' reliance on decade-old IMPLAN data in the economic model used to develop rebuilding plans was also not substantially justified. In a rehash of their losing summary judgment argument, Defendants complain that incorporation of more current data would have been "time-consuming and resource-intensive" and contend that *Massachusetts v. Daley,* 10 F.Supp.2d 74 (D.Mass.1998), authorized them to ignore it. Dkt. No. 353 at 5 n. 2. *Daley,* however, addresses only NMFS's obligation to develop better data, *see* 10 F.Supp.2d at 77, not to update an existing model with data that Defendants do not dispute was readily available. This Court underscored this distinction in ruling that "neither [*Daley* nor *NRDC v. NMFS* ] expressly condones failing to use available data to update a statistical model which is currently relying on data that is over ten years old, and which also reflects revenue from unsustainable fishing prior to [the] time when the species at issue were declared as overfished." Dkt. No. 340 at 19–20. Defendants' use of outdated IMPLAN data to assess rebuilding obligations and subsequent defense of that choice lacked a reasonable basis in law and fact.

Defendants' position on the scope of the administrative record was unjustified because it violated controlling precedent, as this Court found in ordering completion of the record. Dkt. No. 226 at 6–9. Defendants' decisions to limit the record to documents actually considered by the decision-maker, and to exclude types of documents routinely consulted in analogous environmental litigation against NMFS (such as emails), were contrary to both established law and settled practice in this Circuit. *Id.* These were not issues of first impression and it was unreasonable of Defendants to pursue their record-compilation policy once they were on notice it was unlawful.

In attempting to justify their opposition to NRDC's motion for leave to file its Fifth Amended Complaint, Defendants merely restate the unsuccessful arguments in their opposition to that motion. Dkt. No. 353 at 6. Defendants give this Court no reason to revisit its determination that those arguments had "no merit." Dkt. No. 261 at 4. Defendants' opposition to NRDC's motion for leave to amend was not substantially justified.

Defendants also suggest that their position in this litigation must have been substantially justified because they won on some issues. Dkt. No. 353 at 3–4, 6. But "the degree of a plaintiff's success does not affect the substantial justification determination." *The Lands Council v. Swick,* 2005 WL 3241184, at *7 (D.Idaho Nov. 23, 2005) (citing *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 160–61, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)); *see also id.* at *4. Courts "may resolve the question of [the plaintiff's] entitlement to attorney's fees by considering only the . . . issues on which the district court reversed" the challenged agency action. *Flores v. Shalala,* 49 F.3d 562, 566 (9th Cir.1995). Defendants cite *U.S. v. Rubin,* 97 F.3d 373, 375 (9th Cir. 1996), for the proposition that EAJA favors treating a case as an "inclusive whole" for purposes of determining substantial justification. Dkt. No. 353 at 6. The cited language is inapposite. It comes from *Jean,* 496 U.S. at 161–62, 110 S.Ct. 2316, and refers to an evaluation across all phases of the litigation, not across claims.

**B. NRDC seeks EAJA recovery for a reasonable number of hours at reasonable rates and for reasonable expenses.**

**1. NRDC is entitled to recover fees at its requested hourly rates.**

**a. NRDC is entitled to recover fees at market rates.**

A court may award fees in excess of the EAJA statutory rate based on "a special factor, such as the limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). Defendants concede that "[e]nvironmental law is a recognized specialty for which enhanced rates are appropriate." Dkt. No. 353 at 8 (citing *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir.1991)). They do not dispute that the attorneys for whose time NRDC seeks to recover possess environmental legal expertise; that environmental expertise was necessary in this case; or that NRDC could not have secured other qualified counsel at the statutory rate. *Id.* at 8–10; see also Dkt. No. 349 at 12–17. Defendants nonetheless suggest that each attorney must also "demonstrate prior experience litigating under the Magnuson–Stevens Act" and specialized skill in the environmental subspecialty of fisheries litigation before NRDC may recover for their time at market rates. Dkt. No. 353 at 9. Defendants cite no authority for the proposition that prior expertise in any such environmental sub-specialization is required to exceed the EAJA rate cap. Because there is no dispute that the attorneys for whom NRDC seeks to recover fees applied necessary environmental expertise that NRDC could not have obtained at statutory rates, NRDC is entitled to recover fees at higher rates. *Love*, 924 F.2d at 1496.

**b. NRDC's requested hourly rates are reasonable.**

Having demonstrated the existence of a "special factor" under EAJA, NRDC is entitled to recover reasonable attorneys' fees at "prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A). Defendants agree that San Francisco is the relevant legal market, Dkt. No. 353 at 11, but urge this Court to apply a $50 cut to all the San Francisco market rates documented in NRDC's motion and an additional cut to 2009 rates. *Id.* at 12. The Court finds that NRDC's submissions establish the requested rates are reasonable for this market and Defendants have not met their burden to show otherwise.

In addition to declarations from each individual for whose time it seeks fees, NRDC also submitted declarations from outside attorneys Richard Drury, Harrison Frahn, Jonathan Weissglass, and Douglas Winthrop. These declarants, all seasoned litigators familiar with the local legal market, reviewed the CVs of each attorney for whom NRDC seeks fees and concluded that NRDC's requested rates were reasonable based on that attorney's individual experience and qualifications. See Dkt. No. 349–4 ¶¶ 6–22; Dkt. No. 349–6 ¶¶ 3–8; Dkt. No. 349–18 ¶¶ 3–7; Dkt. No. 349–19 ¶¶ 3–8. The declarations show that NRDC's requested rates are at or below prevailing market rates and satisfy NRDC's burden to "produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008) (noting that "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding pre-

vailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate" under *Blum* (internal citation and quotation marks omitted)).

Once a fee applicant has submitted satisfactory evidence that its requested hourly rates are in line with prevailing market rates, " '[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.' " *Camacho*, 523 F.3d at 980 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir.1992) (emphasis added)). Defendants have not met this burden.

Defendants submitted no evidence that NRDC's requested rates are unreasonable for attorneys with the particular skills and expertise of Mr. Colangelo, Ms. Pagano, and Ms. Kyle, and no evidence that addresses the appropriate rates for attorneys with comparable experience in most of the years covered by NRDC's fee motion. They request cuts to NRDC's requested rates based on cases they contend show that just three of those rates—for Mr. Colangelo in 2006 and 2008 and Ms. Pagano in 2008—are too high. Dkt. No. 353 at 11–12. The cases do not justify reductions to even those three rates, which NRDC has established are reasonable for the San Francisco market. See Dkt. 349 at 18–20.

■ The rates Defendants reference in *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir.2009), and *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2008 WL 5210945, at *5 (N.D.Cal. Dec. 11, 2008) ("*Citizens II* "), were undisputed, and were in fact the amounts requested by the fee applicants. See 569 F.3d at 916. Courts considering fee applications ordinarily have no obligation to consider the reasonableness of rates higher than those requested. *Nadarajah* and *Citizens II* are not evidence

that NRDC's requested rates are unreasonable.

*Citizens I*, the other case on which Defendants rely, also does not support their position. The court in that case explained that it reduced attorney Fink's hourly rate for 2008 from the requested $400 to $350 because Fink had previously requested the lower rate for the same year and type of litigation and had provided no evidence to support his requested increase. 2010 WL 3222183, at *3, *6–7. Significantly, the court did not hold that an hourly rate higher than $350 was presumptively unreasonable for an attorney with Mr. Fink's experience in 2008. *Id.* The court awarded fees at a rate of $350/hour for 2008 work by both Mr. Fink and also for a second attorney with six years' fewer experience than Mr. Fink. *Id.* at *7–9 (rates for attorneys Fink and Weaver).

■ Defendants also rely on *Citizens I* to argue that NRDC's 2009 hourly rates should be reduced to 2008 levels to reflect the slight decrease in the general urban Consumer Price Index between 2008 and 2009. Dkt. No. 353 at 11. *Citizens I* does not require this result. The plaintiffs in that case offered "no argument or evidence to contradict [the government's] argument" that hourly rates for 2009 should be capped at 2008 levels. 2010 WL 3222183, at *5. In addition to declarations establishing that its requested rates for 2009 are reasonable, NRDC has submitted evidence that billing rates in the San Francisco market *increased* between 2008 and 2009. See Dkt. 349–4 ¶ 12 (Drury Decl.) (noting increases in associate rates at Sheppard, Mullin, Richter & Hampton).

Defendants also ignore that each of the three attorneys for whom NRDC seeks fees had attained additional experience by 2009, relative to 2008. Thus, even if Defendants were correct, for example, that firms billed work by fifth-year associates

at the same rate in 2009 as in 2008, this is not evidence that the firms billed work by sixth-year associates in 2009 at the same rates as work by fifth-year associates in 2008. The documented increase in San Francisco market rates between 2008 and 2009, and the increased experience NRDC's attorneys brought to this case in 2009, justify the higher rates NRDC seeks for 2009 work.

## 2. NRDC's fee request reflects a reasonable number of hours.

A prevailing party entitled to an EAJA award may recover fees for all hours reasonably expended in litigating the case. As the Ninth Circuit recently held, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). To prepare this fee motion, NRDC applied billing judgment cuts to exclude just over one third of the more than 2,600 documented hours spent working on this litigation over the past half decade. Dkt. 349–7 ¶ 21; Dkt. 349–10 at 42. NRDC then applied a ten percent across-the-board cut to its remaining claim. Dkt. No. 349 at 10; Dkt. No. 349–7 ¶ 22; Dkt. No. 349–11 at 2. As a result of these cuts, NRDC sought recovery for just over half of the time spent on this case. See Dkt. No. 349–7 ¶ 22; Dkt. 349–10 at 42 (sixty-two percent of documented hours included in fee claim before ten percent across-the-board cut); Dkt. 349–11 at 2 (illustrating ten percent cut).

Defendants ignore these cuts and dispute a limited number of the time entries NRDC included in its fee motion. This Court finds no merit in Defendants' contentions that NRDC's claimed hours should be further reduced to reflect "limited success" and that NRDC is not entitled

to recover fees and expenses for comments on the agency actions challenged in this case. See Dkt. No. 353 at 14, 19–22, 24. The time entries Defendants attack on other grounds collectively concern 99.6 hours of work over five years. See *id.* at 15–18, 23; Kyle Supp. Decl. ¶¶ 4(b)–4(c) (concurrently submitted). NRDC disputes that all of the time reflected in these entries is legally unrecoverable, see Kyle Supp. Decl. ¶¶ 4(c)–4(g), but agrees that fees are not recoverable for four time entries that appear to have been accidentally duplicated and for clerical work. *Id.* ¶¶ 4(b)–4(c).

To avoid what NRDC believes would be a disproportionate investment of this Court's time addressing arguments that concern a small fraction of NRDC's time entries, NRDC revised its EAJA request to deduct all the time previously claimed for these entries. Kyle Supp. Decl. ¶¶ 4(b)–4(c).

### a. NRDC's comment work is compensable under EAJA.

NRDC is entitled to recover reasonable fees and expenses for its comments on the actions challenged in this case and associated environmental and economic reviews. Defendants' argument that comment expenses are unrecoverable is wholly derivative of their erroneous argument that attorney time on comments is unrecoverable. Dkt. No. 353 at 24.

EAJA authorizes awards of attorney's fees for work performed in a class of administrative proceedings " 'where a suit has been brought in a court, and where a formal complaint within the jurisdiction of a court of law remains pending and depends for its resolution upon the outcome of the administrative proceedings.' " *Mendenhall v. National Transp. Safety Bd.*, 213 F.3d 464, 468 (9th Cir. 2000) (emphasis in original) (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 97, 111

S.Ct. 2157, 115 L.Ed.2d 78 (1991)). Fees are recoverable "where there was a court-ordered remand for further administrative proceedings and the agency representation was necessary to carrying out the court's order." *Nadarajah*, 569 F.3d at 919; see also *Melkonyan*, 501 U.S. at 97, 111 S.Ct. 2157 (EAJA fees are recoverable for work at the administrative level where a district court retains jurisdiction and contemplates entering final judgment following administrative proceedings (citation omitted)).

This case began with a challenge to Amendment 12, Defendants' first rebuilding-related amendment to its fishery management plan for Pacific Coast groundfish. Dkt. No. 1. This Court retained jurisdiction after remanding portions of Amendment 12 and went on to issue two orders concerning the pace of NMFS's work on remand and to require status reports from NMFS. *Natural Resources Defense Council v. Evans*, 243 F.Supp.2d 1046, 1048, 1059 (N.D.Cal.2003); *NRDC v. Evans*, 290 F.Supp.2d 1051, 1057 (N.D.Cal.2003); Dkt. Nos. 107, 122, 126, 130, 139. It then allowed NRDC to amend its complaint in this lawsuit to challenge each of Defendants' subsequent Amendments to their rebuilding framework for the fishery: 16–1, 16–2, 16–3 and 16–4. See Dkt. No. 340 at 4; Dkt. No 261 at 3–6.

In July 2005, after NRDC amended its complaint to challenge Amendments 16–1 through 16–3, the Court entered a stay to await the Ninth Circuit's decision in *NRDC v. NMFS*, noting that the ruling might affect final resolution of this case. Dkt. No. 125. In the joint status report filed after the ruling and Defendants' proposed rule on Amendment 16–4, NRDC noted serious defects in the Amendment and said it would "continue to use the administrative process in the hopes of productively resolving these issues until the rule becomes final." Dkt. No. 143.

The rebuilding periods and harvest levels for overfished species in the 2009–2010 Specifications were adopted pursuant to Defendants' rebuilding framework as it stood following adoption of Amendment 16–4. Dkt. No. 340 at 4. In allowing NRDC to amend its complaint to challenge the 2009–2010 Specifications, this Court recognized that those Specifications implicated "the same framework for managing overfished Pacific groundfish NRDC has challenged throughout this case." Dkt. No. 261 at 13.

NRDC's participation in administrative proceedings on the Specifications, Amendment 16–4, and associated environmental and economic analyses was necessary to monitor compliance with earlier court rulings concerning the rebuilding framework for Pacific Coast groundfish and to exhaust and to preserve issues for pending litigation in the event that Defendants continued to violate their rebuilding obligations. Defendants' speculation whether Ms. Pagano would have spent more than two hundred hours preparing very detailed comments on these actions absent this litigation is unfounded. Ms. Pagano assumed these responsibilities because of this lawsuit and performed the challenged tasks "as part of [her] work on this case." See Pagano Supp. Decl. ¶ 2 (concurrently filed). NRDC is entitled to an award of reasonable attorneys' fees and expenses for those efforts. *Mendenhall*, 213 F.3d at 468; *Nadarajah*, 569 F.3d at 919.

b. **This Court does not reduce NRDC's EAJA award to account for purported block billing.**

Defendants are wrong to assert that NRDC's time entries are "replete with block-billing" that justifies "an across-the-board reduction of at least 10 percent" in fees. Dkt. No. 353 at 23. Defendants

have not met their burden to identify any purportedly block-billed entries, and the Ninth Circuit has rejected Defendants' proposed remedy for any such entries. "[A] party complaining about attorney fees [has] a burden of stating their complaints with particularity." *Glover v. Johnson,* 138 F.3d 229, 252 (6th Cir.1998) (citation omitted). Where the party makes only "a generalized objection," the court may ordinarily focus on items that can be identified "through a cursory examination of the bill." *Id* (citation and internal quotation marks omitted); see also *Gates,* 987 F.2d at 1397–98 (fee opponent bears the "burden of rebuttal"); *Moreno,* 534 F.3d at 1116 (noting opposing counsel's burden to "come up with specific reasons for reducing the fee request"); *Citizens I,* 2010 WL 3222183, at *11 (addressing and rejecting block-billing argument by reference to two entries identified by the defendants).

Defendants do not identify with particularity the time entries they believe reflect block billing. The Ninth Circuit defines block billing as "the method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945 n. 2 (9th Cir. 2007) (citation omitted). The Supreme Court has recognized that an attorney seeking fee recovery "should identify the general subject matter of his time expenditures" but "is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart,* 461 U.S. 424, 437 n. 12, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Entries that specify the tasks billed do not constitute block billing. *Citizens I,* 2010 WL 3222183, at *11.

■ Defendants do not identify the time entries they contend reflect block billing, see Dkt. No. 353 at 23, and their proposed ten percent across-the-board cut

to NRDC's fee award would be unwarranted even if Defendants had identified any such entries. The Ninth Circuit has emphasized that block billing "does not justify an across-the-board reduction or rejection of all hours" in a fee application. *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1129 (9th Cir.2008) (citation omitted; emphasis in original). Rather, any reduction must be tailored to "those hours that were actually billed in block format." *Welch,* 480 F.3d at 948 (rejecting district court's application of twenty percent cut to all time entries, just over half of which were block billed). Defendants suggest that some unspecified set of the entries they challenge earlier in their brief reflect block billing, see *id.* at 15 n. 10, but each entry listed on those pages specifies the individual tasks billed. *Id.* at 15–18. NRDC has in fact deducted those very entries (which Defendants challenge on other grounds) from its revised fee claim. Supra at 7; Kyle Supp. Decl. ¶ 4(c). Because Defendants have not identified any block billed hours, no reduction is warranted.

c. **Because NRDC achieved substantial success and its claims were closely related, NRDC's fees should not be further reduced to account for its not prevailing on every claim and issue.**

NRDC achieved significant success in this case and is entitled to an EAJA award commensurate with that success. Defendants' argument that NRDC's requested award should be reduced to reflect "limited success" mischaracterizes both the reach of this Court's rulings, which have already forced Defendants to revise their rebuilding approach for the Pacific Coast groundfish fishery, and the authorities on adjustment for partial success in EAJA fee awards.

### i. NRDC's April 2010 victory forced Defendants to revise the rebuilding framework for all Pacific Coast groundfish species.

Defendants' "limited success" argument misrepresents the relief NRDC sought and obtained in this case in two important ways. First, Defendants repeatedly and falsely assert that this Court granted no relief with respect to four of the seven overfished species at issue. Dkt. 353 at 4, 22 n. 12. Defendants ignore that NRDC's successful challenge to Defendants' reliance on outdated IMPLAN data implicated the economic model Defendants use to develop rebuilding periods and harvest levels for all overfished species. See Dkt. No. 340 at 20–23. The Court's remedy order accordingly remanded the 2009–2010 Specifications as a whole for establishment of revised Specifications that reflect the best available economic science, in addition to vacating the Specifications for the three species Defendants failed to rebuild in the time required by law. Dkt. No. 342 ¶¶ 3–5. Defendants expressly acknowledged that this Court's ruling has affected its rebuilding framework for all Pacific Coast groundfish species in November, when they published proposed 2011–2012 Specifications and a new rebuilding Amendment (16–5) for the fishery. See 75 Fed. Reg. 67,810 (Nov. 3, 2010). The Federal Register notice for Defendants' proposal quotes this Court's holding that NMFS improperly relied on 1998 IMPLAN data in its 2009–2010 Specifications and states that "NMFS used a different approach in this biennial cycle." 75 Fed. Reg. at 67,813. The Pacific Fishery Management Council's website also confirms that Amendment 16–5 is designed "to revise all seven of the existing rebuilding plans for overfished species." Kyle Supp. Decl. Ex. E at 3 (emphasis added). Defendants' claim that this Court's April 2010 orders affected their management of only three overfished species does not square with the plain language of those orders or with Defendants' actions on remand.

Defendants are also wrong to suggest that the Court's decision not to rule on NRDC's challenges to Amendments 12 and 16–1 through 16–3 justifies a reduction in NRDC's EAJA award. Dkt. No. 353 at 22. NRDC referenced these earlier amendments in its opening summary judgment brief as a protective matter because NMFS had not yet clarified whether these amendments remained part of its rebuilding framework or were superseded by Amendment 16–4. See Dkt. No. 302 at 12–13 & n. 6. After Defendants asserted in their opening brief that Amendment 16–4 superseded the earlier amendments, NRDC advised the Court that it no longer sought any relief with respect to the earlier amendments. Dkt. No. 322 at 1. Defendants do not identify any legal or factual issue that the parties and Court would have addressed differently on the merits had Amendments 12 and 16–1 through 16–3 remained in play, and NRDC cannot conceive of one. NRDC's decision not to pursue an order invalidating rebuilding amendments Defendants contend are moot, and that NRDC challenged on largely the same grounds as Amendment 16–4, is not the kind of "limited success" that justifies a fee reduction. The Supreme Court has held that "failure to reach certain grounds is not sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Nor may fees be reduced "merely because the prevailing party did not receive the type of relief it requested." *Gates*, 987 F.2d at 1404 (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). "The result is what matters." *Id.* (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933).

ii. **The Court should award fees that reflect the significant relief NRDC obtained in relation to the hours It reasonably expended.**

To account for the fact that a prevailing party did not succeed on all claims in determining an appropriate EAJA award, courts first ask "whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 & n. 10 (9th Cir.1986) (citing *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933). If the plaintiff's unsuccessful claims were unrelated to its successful ones, courts should exclude time expended on the unsuccessful claims from the plaintiff's fee award. *Id.* at 1141 (citing *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933). If the unsuccessful claims were related to the successful claims, however, courts must evaluate the " 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation' " in setting the award. *Id.* (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). Related claims "involve a common core of facts or [are] based on related legal theories," *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Unrelated claims, by comparison, seek "to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury" on which the relief the plaintiff achieved was premised. *Thorne*, 802 F.2d at 1141 (internal quotation marks and citation omitted). Each claim and issue NRDC lost is closely related to a claim or issue on which it won.

NRDC's challenge to Amendment 16–4 was both legally and factually intertwined with its challenge to the 2009–2010 Specifications. Amendment 16–4 establishes the rebuilding framework Defendants applied in the Specifications, and NRDC's central objection to those Specifications was that they failed to rebuild overfished species in the time required by law. See Dkt. No. 322 at 2–12. NRDC's challenge to the Specifications thus naturally implicated the Amendment. Each of NRDC's legal arguments about the Specifications, other than its NEPA argument, was also directed to the Amendment. Dkt. No. 302 at 15 (argument summary). The Court's summary judgment opinion appropriately did not purport to distinguish the merits of NRDC's challenge to Amendment 16–4 from the merits of NRDC's challenge to the Specifications. See Dkt. No. 340 at 18–44.

NRDC's challenges to the 2009–2010 Specifications for the three species for which this Court vacated those Specifications were closely related to NRDC's challenges to the harvest levels and rebuilding periods for the remaining four species (for which the Specifications were remanded but not vacated). NRDC's legal claim for all seven species was that Defendants had authorized harvest levels that were higher than necessary to meet short-term economic needs in the fishery and thus failed to rebuild the species in "[a]s short [a time] as possible" within the meaning of Section 304(e). Dkt. No. 302 at 15–27. NRDC's Section 304(e) arguments for the seven species also rested on a common core of facts that showed Defendants increased allowable harvests of overfished species against a backdrop of steadily increasing revenues in the fishery as a whole. Id. at 24–27; Dkt. No. 322 at 2–4.

The economic analysis arguments NRDC lost are closely related to the economic analysis argument it won. See Dkt. No. 340 at 18–28. These arguments concerned common legal tests: the Magnuson–Stevens Act's best available science standard and the Administrative Procedure Act's rational-review standard. See Dkt. No. 302 at 27–35. They also rested on similar facts concerning Defendants' fail-

ures to apply current economic science and data and to adequately explain the information they used to decide what harvest levels of overfished species were necessary to meet the "needs of fishing communities" for purposes of Section 304(e). Id. 27–35.

Finally, NRDC's unsuccessful NEPA claim was factually related to its successful Section 304(e) claim. Defendants used NEPA documents not only to identify the environmental impacts of and alternatives to their proposed harvest levels under NEPA, but also to analyze whether those levels would in fact rebuild each species in as short a time as possible for purposes of Section 304(e). NRDC accordingly cited extensively to the EIS on the 2009–2010 Specifications in arguing—successfully—that the Specifications violated Section 304(e). Compare Dkt. No. 300–1 at 2 (EIS on 2009–2010 Specifications located at PER000125–PER00443 of NRDC's record excerpts) with Dkt. No. 302 at 18, 20, 25 (citations to EIS on 2009–2010 Specifications).

■■■ Because each issue NRDC lost in this case relates closely to an issue it won, this Court's fee award must reflect the "significance of the overall relief obtained by [NRDC] in relation to the hours reasonably expanded on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. NRDC's requested award is commensurate with this standard. NRDC achieved substantial relief on two of the three claims in its Fifth Amended Complaint, including its central claim that Defendants had failed to rebuild overfished species in as short a time as possible. See Dkt. 260 at 4–16; Dkt. No. 340; Dkt. No. 349 at 1–3, 5–6; supra II.B.3.a. That relief forced Defendants immediately to revise their 2009–2010 harvest levels for three overfished species and to alter their rebuilding framework for the entire fishery. NRDC's only wholly unsuccessful claim concerned NEPA violations to which

NRDC devoted just three of its forty-five pages of summary judgment argument. Dkt. No. 302 at 15–40; Dkt. No. 322 at 1–20. NRDC has already deducted from its fee request all time entries identified as related solely to work on its NEPA claim. Dkt. 349–7 ¶ 14. It has also applied an across-the-board ten percent cut in recognition of the fact that other entries for which it seeks recovery may reflect some work on unsuccessful claims and issues. Id. ¶ 22.

Given the relatedness of NRDC's claims and the significant overall relief NRDC has obtained in this case, no further reduction for degree of success is warranted.

### 3. NRDC is also entitled to reasonable fees for its work on this motion.

■■■ NRDC is entitled to recover fees for time spent establishing its entitlement to an EAJA award. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir.1992). NRDC requests a supplemental award of $14,722.15 for 84.3 hours of work at the inflation-adjusted EAJA statutory rate. See Kyle Supp. Decl. ¶ 4(a) & Exs. A, B, & D; Berman Decl. Ex. A (concurrently submitted). This figure reflects application of numerous billing judgment cuts and accounts for approximately half the time expended on fee recovery. Kyle Supp. Decl. ¶ 4(a). It is reasonable and commensurate with the total award sought in this case. See, e.g., *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2006 WL 5692819, at *14–15 (N.D.Cal. Nov. 3, 2006) (report and recommendation finding fee recovery claim of $15,786.76, based on 99.9 hours of work at EAJA rates, reasonable in light of total fee award of $67,823.18); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, No. 01–728–MJJ, Dkt. No. 165 (N.D.Cal. Nov. 17,

2006) (order adopting recommendation and awarding fees).

A chart of all the attorneys' hours and the related work is at Kyle Supp. Decl. Ex. D.

### 4. NRDC is also entitled to an award of its reasonable expenses.

EAJA also entitles NRDC, as a prevailing party, to an award of reasonable expenses incurred in this litigation. 28 U.S.C. § 2412(d)(1)(A). NRDC requests compensation for only two categories of expenses: (1) mailing expenses for NRDC's comment letters on Defendants' proposed rule adopting the 2009–2010 Specifications and two associated environmental analyses; and (2) outside document production expenses for preparation of the Excerpts of Record NRDC submitted with and cited in its successful 2009 summary judgment briefing. See Kyle Dec. ¶ 24 & Ex. E. NRDC does not seek compensation for its other expenses, which included numerous overnight mail and courier expenses for delivery of the courtesy chambers copies required under this Court's Local Rules and PACER access charges. *Id.*

Federal Defendants do not dispute that Plaintiff is entitled to recover reasonable costs under EAJA. *International Woodworkers, Local 3–98 v. Donovan,* 792 F.2d 762, 767 (9th Cir.1985) (prevailing plaintiffs under EAJA are entitled to recover "costs that are ordinarily billed to a client" including "telephone calls, postage, air courier and attorney travel expenses").

NRDC's comment letters on the 2009–2010 Specifications included detailed legal and technical discussion of the issues pursued in this litigation. They helped NRDC satisfy obligations to administratively exhaust litigation issues by raising them during Defendants' rulemaking process and formed part of the record material NRDC cited in summary judgment briefing. See, e.g., Dkt. No. 302 at 28 n. 12 (citing NRDC's comments on the 2009–2010 Specifications). NRDC's provision of Bates stamped and text-searchable Excerpts of Record facilitated reference and citation to those portions of the 120–volume, 7–disc administrative record most germane to NRDC's legal claims. NRDC arranged for production of the text-searchable CD–ROM versions of these Excerpts in response to a request from chambers. See Kyle Dec. Ex. E. These document production and mailing expenses were reasonable and necessary to NRDC's success and are compensable under EAJA. See, e.g., *Aston v. Sec'y of Health & Human Servs.,* 808 F.2d 9, 12 (2d Cir.1986) (photocopying expenses compensable under EAJA); *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988). NRDC's total expense request is $2,213.38. Federal Defendants concede that costs are recoverable (Opp. at p. 24) but request that the Court limit Plaintiff's recovery of costs to $2,043.58, by deducting $169.80 related to attorney Laura Pagano's participation in the submission of comments on the draft and final EIS and the proposed rule on the 2009–2010 specifications, using the same rationale Defendants employed to argue that Ms. Pagano's hours should also be excluded. For the same reasons it rejected Defendants' argument to exclude Ms. Pagano's hours, this Court awards Plaintiffs their full expenses, including those related to her comment work. The Court finds this to be a reasonable and even modest amount of expenses for this complex and fact-intensive litigation.

### IV. Conclusion

For the reasons stated above, the Court hereby grants NRDC's motion for an

award of $505,841.41 in attorneys' fees and expenses under EAJA.

IT IS SO ORDERED.