Bonnie Lee MENDENHALL,
Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation Administration, Respondents.

No. 98–70211.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1999

Filed May 22, 2000

As Amended on Denial of Rehearing July 10, 2000

Joseph D. Kuchta (argued), Kuchta & Brinker, Washington, D.C., for the petitioner.

Frank W. Hunger, Michael Jay Singer, and John S. Koppel (argued), United States Department of Justice, Washington, D.C., for the respondent.

Before: REINHARDT, THOMPSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a federal agency properly determined an award of attorneys' fees to a petitioner wrongly charged with violating that agency's regulations.

I

This case first came before us as a petition for review of an order issued by the National Transportation Safety Board ("NTSB") denying attorneys' fees under the Equal Access to Justice Act ("EAJA"), Pub.L. No. 99–80, 99 Stat. 183 (1985), *codified at* 5 U.S.C. § 504, 28 U.S.C. § 2412. *See Mendenhall v. NTSB ("Mendenhall*

*I"*), 92 F.3d 871 (9th Cir.1996). There, we held that the position that the Federal Aviation Administration ("FAA") had assumed during certain enforcement proceedings was not substantially justified. We thus remanded the case to the NTSB with instructions to award the petitioner, Bonnie Lee Mendenhall ("Mendenhall"), attorneys' fees for the period commencing May 23, 1992, the date on which the FAA should have recognized the untenability of its position and abandoned those enforcement proceedings. *See* 92 F.3d at 877. Because we concluded that the FAA had acted in bad faith, we directed the NTSB to award attorneys' fees at a reasonable market rate, notwithstanding the relevant statutory fee caps. *See id.* (citing 28 U.S.C. § 2412(b); *Brown v. Sullivan,* 916 F.2d 492, 495–96 (9th Cir.1990)). We subsequently directed the NTSB to award attorneys' fees at a reasonable market rate for expenses incurred on appeal to this court as well.

On remand, the NTSB felt compelled to address a "jurisdictional difficulty" presented by our decision. *See Mendenhall v. Administrator,* NTSB Order No. EA–4612 at 3 (Dec. 30, 1997). The NTSB noted that EAJA provides differently for attorneys' fees that are incurred during administrative enforcement proceedings and those that are incurred during judicial proceedings. More precisely, the NTSB observed that one statutory provision, 5 U.S.C. § 504, applies to the former and another, 28 U.S.C. § 2412, applies to the latter. As the NTSB observed, both provisions impose a cap on attorneys' fees, but only 28 U.S.C. § 2412 has been interpreted to authorize awards exceeding that cap upon a finding that the government has acted in "bad faith." Hence, the NTSB expressed misgivings about its authority to base an award of attorneys' fees incurred in the course of the proceedings before the NTSB on a "reasonable market rate" exceeding the statutory fee cap imposed by 5 U.S.C. § 504. *See id.* at 3–4. Notwithstanding this "jurisdictional difficulty," the NTSB dutifully executed our order and awarded Mendenhall attorneys' fees for all relevant proceedings at what it determined to be a reasonable market rate. *See id.* at 4.

In calculating the reasonable market rate, the NTSB rejected Mendenhall's proposed rate of $300 per hour. The Board held that Mendenhall had failed to satisfy her burden of proof " 'that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.' " *Id.* (quoting *Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987)). The NTSB found that the rate that Mendenhall's attorney had actually billed her, $150 per hour, was the reasonable market rate. Thus, the NTSB ordered that Mendenhall be reimbursed for the attorneys' fees that she incurred during the FAA enforcement action and petition for review to this court at a rate of $150 per hour. *See id.* 8–9.

Mendenhall had also requested attorneys' fees for twenty-one-and-a-half hours of work performed during the remand proceedings before the NTSB. The NTSB found these hours to be excessive, because they included time spent researching the issue of whether "bad faith" on the part of the FAA entitled Mendenhall to attorneys' fees in excess of the statutory cap-an issue that we had already decided in her favor in *Mendenhall I. See id.* at 10. The NTSB thus ordered that Mendenhall be compensated for only sixteen-and-a-half hours. *See id.* The NTSB also denied Mendenhall's request for attorneys' fees for an additional seven hours spent in preparing two short briefs of supplemental authorities, because those briefs were filed after the relevant deadline and did not cite any authorities that could be deemed "new." *See id.* at 11 n. 13.

Mendenhall petitions for review of the NTSB's determination of the reasonable market rate for her legal representation and the NTSB's refusal to award compensation for twelve hours of her attorney's

preparation. In addition to defending the NTSB's order on these points, the respondents argue, for the first time before this court, that we lacked the authority to direct in *Mendenhall I* that the NTSB should compensate Mendenhall "at a reasonable market rate" for the attorneys' fees she incurred before the NTSB prior to her first petition to this court for administrative review.

## II

■ We shall address first the respondents' contention that this court lacked the authority under EAJA to order an award of attorneys' fees "at a reasonable market rate" for legal services provided while this case was before the NTSB and not yet before us on a petition for administrative review.

### A

EAJA provides that prevailing parties in certain adversary proceedings may recover attorneys' fees from the government. Section 504 explicitly governs awards of fees incurred in administrative proceedings:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1). Mendenhall applied to the NTSB for attorneys' fees pursuant to section 504, but we directed the NTSB in *Mendenhall I* to award Mendenhall attorneys' fees incurred during the FAA enforcement proceeding pursuant to 28 U.S.C. § 2412(b). This section provides, in relevant part, that:

> a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States or any

agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law....

28 U.S.C. § 2412(b). This court has held that § 2412(b) empowers courts to award attorneys' fees "at a reasonable market rate," albeit in excess of the relevant statutory cap, when the government has acted in bad faith. *See Brown v. Sullivan,* 916 F.2d 492, 495 (9th Cir.1990) ("Under certain conditions, ... the EAJA allows for an award of attorney fees at a reasonable market rate.... Th[e] 'liable under the common law' provision has been used to allow awards of attorney fees at market rates in cases involving 'bad faith' by the United States....").

Relying heavily on the plain text of EAJA, the government argues that we erred in *Mendenhall I* by relying on 28 U.S.C. § 2412(b) to order such an award because § 2412 is not applicable to administrative proceedings. Instead, according to the government, the recovery of expenses incurred in administrative proceedings is governed *exclusively* by 5 U.S.C. § 504. This contention is significant, because § 504 does not permit a prevailing party to recover fees in excess of the relevant statutory cap whereas § 2412(b) does. The government now maintains that, pursuant to § 504, Mendenhall's award of attorneys' fees should have been limited to $75 per hour, the maximum under that section's fee cap.

The Supreme Court's case law squarely supports the government's argument that 5 U.S.C. § 504 governs proceedings before administrative agencies whereas 28 U.S.C. § 2412 governs only proceedings that come under the jurisdiction of the courts. The Court stated explicitly in *Melkonyan v. Sullivan* that "[s]ection 504 was enacted at the same time as § 2412, and is the *only part of the EAJA* that allows fees and expenses for *administrative proceedings*

conducted prior to the filing of a civil action." 501 U.S. 89, 94, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (emphases added).

In *Melkonyan*, the Court distinguished the deadline for applying for attorneys' fees pursuant to § 2412 from the deadline under § 504. The case involved an EAJA applicant who had sued for social security benefits in the federal district court; the district court had remanded the case to the Social Security Administration ("SSA") without entering a final judgment on the merits. The SSA relented and granted the applicant benefits, but the applicant waited over a year before applying under § 2412 for attorneys' fees incurred before the SSA. *See id.* at 92, 111 S.Ct. 2157. At issue was whether the deadline for the application under § 2412 had passed. It was undisputed that, if the application in that case had been covered by § 504, the deadline would have been thirty days from the final order of the SSA, a date that the applicant had obviously missed. The SSA argued that the deadline under § 2412 was the same as the deadline under § 504 and thus that the application was just as clearly overdue under § 2412. *See id.* at 95, 111 S.Ct. 2157.

The *Melkonyan* Court disagreed. Relying in part on the fact that § 504 applies to applications for attorneys' fees incurred before *agencies* whereas § 2412 applies to applications for attorneys' fees incurred before *courts*, the Court held that the reference to a "final judgment"-which appeared in the deadline provision of § 2412 but not in the analogous provision of § 504-referred exclusively to the final judgment of the relevant court (which had not been rendered) and not to the ultimate disposition rendered by an agency. *See id.* at 94–95, 111 S.Ct. 2157.

In language that is particularly relevant to the case before us, the *Melkonyan* Court also rejected the SSA's contention that *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), undermined the Court's premise that § 504 applies to administrative proceedings and § 2412 applies exclusively to courts. In *Sullivan*, the Court held that district courts can, pursuant to § 2412, order the award of attorneys' fees incurred in certain administrative proceedings. In explicating the limited force of that ruling, the Court stated that the "narrow class" of administrative proceedings to which the district court's authority under § 2412 extends comprises only "those 'where a suit *has been brought* in a court,' and where 'a formal complaint within the jurisdiction of a court of law' *remains pending* and depends for its resolution upon the outcome of the administrative proceedings.'" *Melkonyan*, 501 U.S. at 97, 111 S.Ct. 2157 (emphases added) (quoting *Hudson*, 490 U.S. at 892, 109 S.Ct. 2248).[1]

In addition to the plain text of the EAJA provisions and the explicit holdings of the Supreme Court, EAJA's substance itself counsels against relying on § 2412 as implicit authorization for this court to award attorneys' fees incurred in administrative proceedings prior to the filing of a civil suit. As the Supreme Court stated in *Ardestani v. INS*, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991), "EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial

---

1. Dissenting in *Hudson*, Justice White explained the organization of EAJA:

 Section 504, not § 2412, is the provision of the EAJA that governs the recovery of fees in proceedings before administrative agencies; indeed, Congress was careful to place § 504 in Title 5 of the United States Code, which governs procedures before administrative agencies, while placing § 2412 in Title 28, which governs procedures before courts.

 490 U.S. at 895, 109 S.Ct. 2248 (White, J., dissenting). The majority did not disagree with Justice White on this point, but the majority felt that the administrative proceedings in *Hudson* were so intimately tied to the judicial proceedings that the court could award fees under § 2412 for work performed at the administrative level. *See id.* at 890, 109 S.Ct. 2248.

waiver of sovereign immunity." Thus, its provisions "must be strictly construed in favor of the United States." *Id.* Because nothing in § 2412 explicitly authorizes us to award attorneys' fees incurred outside of a "civil suit," we must reject any supposition that we enjoy such authority under this section.

We are forced to conclude that, for want of proper briefing on the limited authority conferred by § 2412, we erred in *Mendenhall I* when we instructed the NTSB to award to Mendenhall the attorneys' fees that she incurred prior to our review "at a reasonable market rate." That instruction contravened plain statutory text and Supreme Court case law and neglected the fact that EAJA must be narrowly construed. Because § 504 governed the award of those fees, Mendenhall's recovery should have been limited by the statutory cap in force at the time to $75 per hour.

### B

■■■ Our decision to revisit our holding in *Mendenhall I* implicates the "law of the case" doctrine. Under that doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case. *See United States v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997). The effect of the doctrine is not dispositive, particularly when a court is reconsidering its own judgment, for the law of the case "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *see United States v. Maybusher,* 735 F.2d 366, 370 (9th Cir.1984). We have held elsewhere that a court may depart from the law of the case when (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *See Alexander,* 106 F.3d at 876.[2]

■■■ The government argues that our decision in *Mendenhall I* both was clearly erroneous and would work a manifest injustice. We agree for the reasons stated above that we clearly erred in instructing the NTSB to award attorneys' fees that were incurred prior to Mendenhall's petition for administrative review at "a reasonable market rate." Moreover, because our erroneous decision essentially abrogates the statutory fee cap in administrative proceedings involving bad faith on the part of federal agencies, it threatens to impose on the U.S. Treasury costs far beyond the four corners of this case. The adverse fiscal consequences of our instruction in *Mendenhall I* could prove substantial. We therefore vacate that instruction.[3]

**2.** Elsewhere, this court has indicated that the first and last bases for departing from the law of the case must be found together to justify a departure. *See Leslie Salt Co. v. United States,* 55 F.3d 1388, 1392 (9th Cir.1995) ("The law of the case doctrine is not an absolute bar to reconsideration of matters previously decided.... Thus, the court may reconsider previously decided questions in cases in which ... the previous disposition was clearly erroneous and would work a manifest injustice."). We do not hold here that manifest injustice *must* be found in order to justify deviating from the law of the case, particularly where the sufferer of any inconvenience would be the federal fisc, but it is plain that we should reconsider our instructions in *Mendenhall I* regardless of whether manifest injustice must otherwise result.

**3.** In doing so, we emphasize that we revise our holding in *Mendenhall I* only because of the overwhelming importance of the matters involved and despite our strong inclination to deny the government relief that it inexplicably failed to request in its petition for rehearing in that case.

We are sensitive to the fact that a panel of this court "should be exceedingly careful in altering the law of its earlier opinion" when "subsequent panels have relied on" that opinion. *Jeffries v. Wood,* 114 F.3d 1484, 1484 (9th Cir.1997). Our research reveals no instance, however, in which a federal court has relied upon *Mendenhall I* as authority for the proposition that the government's bad faith is an adequate basis for the market-rate reimbursement of attorneys' fees incurred in administrative proceedings.

■ Although the NTSB used the rate of $150 per hour in calculating Mendenhall's award for attorneys' fees incurred before the NTSB, we now hold that the rate should not have exceeded $75 per hour (pursuant to the statutory cap under 5 U.S.C. § 504). Nevertheless, we lack jurisdiction to reverse and to remand the NTSB's award for recalculation using the correct rate. *See Massachusetts Mut. Life Ins. Co. v. Ludwig,* 426 U.S. 479, 480, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976) ("[T]he appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary."); *Seafarers Int'l Union of North America v. NLRB,* 895 F.2d 385 (7th Cir.1990) (acknowledging the "unexceptionable proposition that a person who wants to upset an administrative order must file a petition for review"). At the same time, we can-and must-reject in light of our reconsideration of our prior decision Mendenhall's argument that her award relating to litigation before the NTSB should have been calculated using a rate higher than $150 per hour. *Cf. United States v. Bajakajian,* 84 F.3d 334, 338 (9th Cir. 1996). We therefore deny Mendenhall's petition for review insofar as it challenges the NTSB's application of the $150–per–hour rate to the seventy-three hours and ten minutes spent in, and in preparation for, the proceedings before the NTSB prior to the filing of Mendenhall's first petition for review in this court as well as for the allowable time spent in, and in preparation for, the proceedings before the NTSB after our remand in *Mendenhall I.*[4]

### III

■ We must now address Mendenhall's contention that the NTSB erred in finding that "a reasonable market rate" for the attorneys' fees incurred on petition for review to this court in *Mendenhall I* was $150 per hour rather than the $300 per hour that Mendenhall claimed in her EAJA application. We review an agency's award of attorneys' fees under EAJA for an abuse of discretion. *See Meinhold,* 123 F.3d at 1280.

■ In support of her application, Mendenhall submitted invoices from her attorney (which reflected that he charged her $150 per hour) and the attorney's affidavit. In the affidavit, the attorney averred that he was "an attorney specializing in aviation-related matters," that his practice included "representing airmen and air carriers before the Federal Aviation Administration, the National Transportation Safety Board, and the Department of Transportation," and that his clients included "airmen, and other persons, firms and corporations owning and/or operating aircraft." He further stated:

> Occasionally, I lower my billing rate, in the interest of justice, for clients who are unable to pay the market rate. However, the rate I charge clients who are able to pay is $300 per hour. I have found that this rate, $300 per hour, is the fair market value of my services. In other words, $300 per hour is the highest rate that clients with the ability to pay are willing to pay for my services.

Mendenhall also submitted affidavits from four other attorneys, Lawrence H. Brinker, Michael L. Dworkin, Steven L. Graff and Joseph E. Schmitz. These affiants attested that they were attorneys specializing in aviation matters and that they typically charged between $250 to $315 per hour. All of the attorneys stated in their affidavits that their practices included representing clients in enforcement proceed-

---

4. We decline to award attorneys' fees incurred before the NTSB after our remand "at a reasonable market rate" in excess of the statutory cap as permitted by 28 U.S.C. § 2412(b), because we do not find those pro-

ceedings to be "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award" under § 2412. *See Sullivan v. Hudson,* 490 U.S. at 892, 109 S.Ct. 2248.

ings brought by the FAA before the NTSB. Two of these attorneys practiced in Washington, D.C., and two practiced in California.[5]

The FAA presented no evidence to the NTSB regarding the prevailing market rate for the legal services that Mendenhall obtained. Instead, the FAA simply contended that Mendenhall had failed to carry her burden in establishing a reasonable market rate of $300 per hour. The FAA discounted the affidavits from the four non-representing attorneys because they did not indicate the time periods for which the affiants' billing rates were as stated. The FAA also contested the relevance of the affidavit from Mendenhall's own attorney, because "[t]he copies of the invoices [that he] submitted ... [we]re devoid of any evidence demonstrating that the reasonable market rate for his services was other than $150.00 per hour."

The NTSB concluded that, "[a]side from her attorney's claim that the market rate for his services is $300 per hour, there is nothing in [Mendenhall's] fee application that explains why the $150 per hour indicated on the invoices from her attorney is not a true reflection of the market for these services," NTSB Order No. EA–4612

at 8, and awarded Mendenhall attorneys' fees at the rate of $150 per hour, *see id.* at 9.

■ In determining "a reasonable market rate" for Mendenhall's legal services, the NTSB placed inordinate weight on the actual rates charged by Mendenhall's attorney as reflected in the invoices that Mendenhall submitted. This court has repeatedly held that the determination of a reasonable hourly rate " 'is not made by reference to the rates actually charged the prevailing party.' " *Schwarz v. Secretary of Health and Human Services,* 73 F.3d 895, 908 (9th Cir.1995) (quoting *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *modified by* 808 F.2d 1373 (1987)).[6] To the extent, therefore, that the NTSB relied on the rates Mendenhall's attorney actually charged her, it abused its discretion. *Cf. Chadha v. INS,* 634 F.2d 408, 429 (9th Cir.1980) (noting that an agency abuses its discretion when its decision is "rested on an impermissible basis ... or ... on other 'considerations that Congress could not have intended to make relevant.' ").

■ The NTSB also abused its discretion by failing to give sufficient consider-

---

**5.** Mendenhall reasoned that the applicable forums were Washington, D.C., where the NTSB is located, and California, where the Ninth Circuit is headquartered. In its decision, the NTSB noted that under its regulations, the relevant community is where the attorney practices, in this case, Washington, D.C. Under Ninth Circuit case law, however, the relevant legal community is the "forum district." *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992); *cf. Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir.1997) ("Generally, the relevant community is the forum in which the district court sits."). Given that the NTSB was directed by this court to award reasonable attorneys' fees both for the administrative proceedings and appellate proceedings, it seems entirely appropriate that Mendenhall submitted declarations from attorneys in both forums. Moreover, in light of our holding today that the "reasonable market rate" determination is relevant only for attorneys' fees that Mendenhall incurred before the Ninth Circuit, the affidavits of California

practitioners are particularly relevant (notwithstanding the fact that Mendenhall's attorney for this appeal generally practices in Washington, D.C.).

**6.** We acknowledge, however, that some of our sister circuits have held that a reasonable market rate is the attorney's actual billing rate. *See Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 909–10 (6th Cir.1991) (holding that the district court was not required to determine the prevailing market rate in the community because the court had been given the attorney's actual billing rates); *Shakopee Mdewakanton Sioux Community v. City of Prior Lake,* 771 F.2d 1153, 1160 (8th Cir.1985); *see also Webb v. Maldonado,* 484 U.S. 990, 108 S.Ct. 480, 98 L.Ed.2d 509 (1987) (White, J., dissenting from denial of certiorari) (arguing that Supreme Court should resolve division among circuits on whether attorneys with an established billing rate should be compensated under fee-shifting statutes at market rates or at ordinary billing rates).

ation to Mendenhall's other submissions in support of her fee application. The NTSB rejected Mendenhall's submissions because they were too vague to carry her burden. The NTSB's evaluation was based both on an idealized standard of precision in fee applications that we do not require and on a significant mischaracterization of the affidavits that Mendenhall submitted. In the NTSB's view, those affidavits contained only a "brief recitation of the affiants' experience, training, and usual hourly rate," "had no information on the type of work the affiants typically perform," and thus provided the NTSB with no information on market rates for legal work in cases "comparable" to Mendenhall's. NTSB Order No. EA–4612 at 7. Although it is true that Mendenhall's submitted affidavits would have been more useful and persuasive if they had incorporated more detail, they were sufficiently illuminating to sustain Mendenhall's initial burden of showing a reasonable market rate in cases like hers. Four different attorneys with the same specialization as that of Mendenhall's attorney and practicing in the relevant fora stated that their rates exceeded $250 per hour, and these assertions were unchallenged by the FAA. This court has held that such affidavits satisfy the initial burden borne by the fee applicant in the complete absence of contrary evidence. *See, e.g., United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990) (holding that the district court abused its discretion in awarding attorneys' fees at $100 per hour when "[a]ll the evidence produced by the plaintiffs supported a market rate between $125 and $160 per hour," and the defendants "did not support their arguments with *any* affidavits or evidence of their own regarding legal rates in the community" (emphasis added)); *see also Dennis v.*

*Chang*, 611 F.2d 1302, 1309 (9th Cir.1980) ("Six affidavits of other counsel were offered regarding the customary billing rate for attorneys in the community.... These affidavits were sufficient to permit the court to determine a reasonable rate for attorneys of comparable experience in cases of comparable complexity.").

Moreover, the affiants' statements established their relevance with significantly greater specificity than the NTSB indicated in its order. All of the affiants stated specifically that their practices included "regulatory enforcement" matters brought by the FAA, which is the sort of proceeding at issue here. In addition, two of the affiants indicated that their clients included persons in Mendenhall's station: Steven L. Graff specifically stated that his clients included "airmen" and "persons ... owning and/or operating aircraft" and Michael L. Dworkin indicated that his clients included "commercial operators ... and other persons ... owning and/or operating aircraft." We find that Mendenhall carried her burden of demonstrating "a reasonable market rate" for the legal services she obtained on petition for review to this court and that she succeeded in showing that the rate exceeded $250 per hour. We therefore hold that the NTSB abused its discretion in awarding her attorneys' fees at the rate of only $150 per hour and remand for an award of attorneys' fees at between $250 and $315 per hour for the 141 hours her attorney spent in, and in preparation for, the petition for review to this court in *Mendenhall I*.

## IV

Mendenhall further contends that the NTSB abused its discretion when it disallowed her claims for attorneys' fees for

twelve hours of legal services that she obtained.

## A

The NTSB first denied Mendenhall compensation for five hours out of the twenty-one-and-a-half hours' worth of attorneys' fees that she incurred before the NTSB on remand from this court in *Mendenhall I.* Specifically, the NTSB refused to compensate Mendenhall for time spent researching agency bad faith and for excessive time drafting a brief. *See* NTSB Order No. EA–4612 at 10.

 We do not agree that the NTSB abused its discretion in rejecting Mendenhall's application for these expenses. The NTSB found that it was unreasonable for Mendenhall to seek reimbursement for research on agency bad faith, because the issues of whether there was bad faith on the part of the FAA and what the importance of that bad faith would be for an award of attorneys' fees had already been determined conclusively by this court. *See id.; see also Mendenhall I,* 92 F.3d at 877. As to the drafting of Mendenhall's brief, the NTSB found that the ten-and-a-half hours claimed for drafting the brief was excessive, because the brief substantially reiterated language and arguments in Mendenhall's prior petition to this court. *See* NTSB Order No. EA–4612 at 10. The NTSB did not err in concluding that the research that Mendenhall's attorney undertook on agency bad faith was unnecessary and that his preparation of the appeal brief was largely duplicative, and we therefore affirm the NTSB's disallowance of the five hours in question.

## B

Mendenhall also alleges that the NTSB abused its discretion in refusing to reimburse her for seven hours her attorney spent preparing supplemental briefs submitted after the deadline for filing briefs with the NTSB had passed. Mendenhall's attorney submitted these briefs pursuant to Rule 821.48(e) of the NTSB's Rules of Procedure. Rule 821.48(e) specifically states that filing of additional briefs is allowed only for citations of "new" authority. The NTSB noted that Mendenhall's additional citations were not new and were available at the time Mendenhall filed her appeal brief. *See* NTSB Order No. EA–4612 at 11 n. 13. The NTSB thus struck these briefs from the record and denied Mendenhall reimbursement for their preparation.

 Mendenhall argues that, because Rule 821.48(e) was modeled on Federal Rule of Appellate Procedure 28(j), *see Aviation Rules of Practice–General Provisions,* 58 Fed.Reg. 54102, 54103 (Oct. 20, 1993), and Rule 28(j) allows for submission of supplemental citations even if they were available at the time of briefing, Rule 821.48(e) should be interpreted to permit such submissions and Mendenhall should be reimbursed for the time her counsel spent preparing them. This argument lacks merit, for the text of Rule 821.48(e) is clear; it provides that "[t]his procedure may be used *only* for identifying *new,* relevant decisions, *not to correct omissions in briefing* or to respond to a reply" (emphases added). In refusing to compensate Mendenhall for the seven hours her attorney spent preparing the supplemental briefs, the NTSB is only vindicating the plain and established meaning of its rule. This is not an abuse of its discretion. We therefore affirm the NTSB's disallowance of Mendenhall's claim for the attorneys' fees incurred in the seven hours spent preparing those submissions.

## V

To review, we acknowledge our error in *Mendenhall I* and hold that Mendenhall's award for the attorneys' fees that she incurred before the NTSB should have been constrained by the EAJA fee cap notwithstanding the FAA's bad faith. Because we lack jurisdiction in administrative review to expand the rights of a non-petitioning

party, however, Mendenhall's award cannot be reduced. Indeed, as to the attorneys' fees that Mendenhall incurred before this court on petition for review, her award should be *increased,* because for those she *was* entitled to remuneration at a reasonable market rate, and she adequately demonstrated that the reasonable market rate was between $250 and $315 per hour rather than the $150 per hour that she was charged. Although the rate that the NTSB used in calculating Mendenhall's award was too low, the number of hours was not.

Mendenhall's petition for review of the NTSB's award of attorneys' fees is therefore GRANTED in part and DENIED in part. The NTSB's order is REMANDED for recalculation of an award not inconsistent with this opinion. Each party shall bear its own costs.