The Honorable JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE
Before the Court is Plaintiff Jennett Harlow's motion for attorneys' fees against Defendants Metropolitan Life Insurance Company ("MetLife") and Kaiser Foundation Health Plan, Inc. Long Term Disability ("Kaiser"). ("Motion," Dkt. No. 64.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78 ; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS-IN-PART Plaintiff's Motion.
I. BACKGROUND
On October 12, 2017, Plaintiff initiated this action under the Employment Retirement Income Security Act ("ERISA"), challenging MetLife's determination that Plaintiff was not "totally disabled" during the 24-month period and subsequent termination of her long-term disability ("LTD") benefits payments. ("Complaint," Dkt. No. 1.) The Court scheduled a bench trial for January 23, 2019 (dkt. no. 55) and later vacated the hearing (dkt. no. 59). On March 11, 2019, the Court entered its Findings of Facts and Conclusions of Law. ("March Order," Dkt. No. 60.) The Court reversed MetLife's decision to terminate Plaintiff's LTD benefits during the 24-month period. (Id. at 18.) Judgment was entered in Plaintiff's favor. ("Judgment," Dkt. No. 61.)
On April 26, 2019, Plaintiff moved for attorneys' fees. (Mot.) In support of her *1051 Motion, Plaintiff attached the following documents:
• Declaration of Michael Horrow ("Horrow Declaration," Dkt. No. 64-1);
• Orders Approving Attorneys' Fees ("Ex. A, "Ex. B," "Ex. C," "Ex. D")
• Horrow Time Billed ("Horrow Time")
• Horrow Costs Incurred ("Horrow Costs")
• Declaration of Nichole D. Podgurski ("Podgurski Declaration," Dkt. No. 64-2);
• Podgurski Time Billed ("Podgurski Time")
• Declaration of Scott E. Calvert ("Calvert Declaration," Dkt. No. 64-3);
• Calvert Time Billed ("Calvert Time")
• Orders Approving Attorneys' Fees ("Ex. J," "Ex. K," "Ex. L," "Ex. M," "Ex. N")
• Declaration of Glenn R. Kantor ("Kantor Declaration")
• Declaration of Robert McKennon ("McKennon Declaration")
• Declaration of Russell G. Petti ("Petti Declaration," Dkt. No. 64-4); and
• Petti Time Billed ("Petti Time")
• Declaration of Ronald Dean ("Dean Declaration")
• Declaration of David C. Scheper ("Scheper Declaration")
• Declaration of George B. Newhouse, Jr. ("Newhouse Declaration")
• Proposed Order (Dkt. No. 64-5).
MetLife opposed the Motion on May 13, 2019. ("Opposition," Dkt. No. 65.) In support of its Opposition, MetLife submitted the following documents:
• Declaration of Misty Murray ("Murray Declaration," Dkt. No. 65-1);
• Exhibit 1: Time Murray Believes is Excessive ("Ex. 1," Dkt. No. 65-2);
• Exhibit 2: Subpoenas ("Ex. 2," Dkt. No. 65-2);
• Exhibit 3: April 12, 2019 Email from Murray to Horrow ("Ex. 3," Dkt. No. 65-2);
• Exhibit 4: Horrow Declarations from Other Actions ("Ex. 4," Dkt. No. 65-2);
• Exhibit 5: Petti Declarations from Other Actions ("Ex. 5," Dkt. No. 65-2);
• Exhibit 6: Calvert Declarations from Other Actions ("Ex. 6," Dkt. No. 65-2);
• Exhibit 7: Podgurski Declarations from Other Actions ("Ex. 7," Dkt. No. 62-2).
Plaintiff replied on May 20, 2019. ("Reply," Dkt. No. 66.) In support of her Reply, Plaintiff filed a second declaration from Scott E. Calvert. ("Calvert 2d Declaration," Dkt. No. 66-1.) She also submitted a time log for the hours billed preparing the Reply. ("Reply Time," Dkt. No. 66-1.)
On May 22, 2019, MetLife filed a supplemental declaration of Misty Murray. ("Murray 2d Declaration," Dkt. No. 67.) Portions of the Murray 2d Declaration do not propose facts, but instead contain legal argument. (See id. ¶ 6.) MetLife neither requested nor received leave to file a surreply. MetLife also filed an Application to File Under Seal. ("Application," Dkt. No. 68.) The Application seeks to file under seal documents related to negotiations concerning attorneys' fees. (Id. )[1]
*1052 II. LEGAL STANDARD
A. Entitlement to Attorneys' Fees
ERISA authorizes a court to award attorneys' fees. 29 U.S.C. § 1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). The award of attorney's fees under ERISA is left to the Court's discretion. Id. A court must first decide whether the litigant has "achieved some degree of success on the merits." Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1119 (9th Cir. 2010). This is not satisfied by achieving "trivial success on the merits" or a "purely procedural victor[y]..." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). But a litigant achieves "some degree of success on the merits" if the court "can fairly call the outcome of the litigation some success ... without conduct a 'lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.' " Id. (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 688 n.9, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) ).
If the litigant has achieved some success, the court then considers five factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. Hummell v. S. E. Rykoff & Co, 634 F.2d 446, 452 (9th Cir. 1980). "[N]o single Hummell factor is necessarily decisive[.]" Simonia, 608 F.3d at 1122. In the Ninth Circuit, courts "ordinarily grant a prevailing beneficiary in an ERISA action reasonable attorneys' fees and costs, absent special circumstances cautioning against it." Boston Mut. Ins. v. Murphree, 242 F.3d 899, 904 (9th Cir. 2001).
B. Amount of a Fee Award
Reasonable attorneys' fees under ERISA are calculated using a hybrid lodestar/multiplier approach. McElwaine v. US West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999) (citing D'Emanuele v. Montgomery Ward Co., 904 F.2d 1379, 1383 (9th Cir. 1990), overruled on other grounds by City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ). A court determines the lodestar amount by multiplying the number of hours reasonably expended by each attorney's reasonable hourly rate. Id. The party seeking the award of attorneys' fees must submit evidence supporting the hours worked and rates claimed. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ). The court excludes from the lodestar amount hours that are " 'excessive, redundant, or otherwise unnecessary.' " Id. The lodestar amount is presumptively reasonable. Id.
III. DISCUSSION
A. Entitlement to Attorneys' Fees
The Court finds that Plaintiff is entitled to reasonable attorneys' fees. As a preliminary matter, MetLife does not dispute that Plaintiff achieved success on the merits of her action. The Court reversed MetLife's determination that Plaintiff was not totally disabled within the meaning of the LTD plan for the 24-month period for which Plaintiff sought review. (See March Order.) Accordingly, the Court can easily determine that Plaintiff's success was both substantial and occurred on a central issue.
*1053 See Hardt, 560 U.S. at 255, 130 S.Ct. 2149.
MetLife points to no "special circumstances" to justify denying Plaintiff's fee request despite her success in this litigation. See Boston Mut., 242 F.3d at 904. Furthermore, the Ninth Circuit has held where the fact that the plaintiff prevailed " 'is evident from the order of the district court, it is unnecessary for the court to engage in a discussion of the factors enumerated in Hummell.' " Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1164 (9th Cir. 2001) (quoting Nelson v. EG & G Energy Measurements Grp., Inc., 37 F.3d 1384, 1392 (9th Cir. 1994) ). Accordingly, because MetLife points to no special circumstances justifying denying attorneys' fees and because is it evident from the March Order that Plaintiff prevailed on the merits of her claim, the Court need not analyze the Hummell factors. Plaintiff is entitled to attorneys' fees.
Even if examination of the Hummell factors was required, the Court would still find Plaintiff established she is entitled to relief. The first factor, bad faith or culpability, is neutral, as the Court did not find that MetLife acted in bad faith. (See March Order.) As to the second factor, MetLife admits it can satisfy an award of attorneys' fees. (Opp'n at 9.) This favors granting an award. The Court finds the third factor also favors an award, as ERISA plans should be discouraged from relying solely on the determination of their retained consultant when the record contains conflicting medical evidence. If a plan discounts the conflicting medical evidence, it should at least explain why. The fourth factor slightly favors an award. Although Plaintiff did not act on behalf of others, her case may clarify an insurer's obligations in the future. Finally, the fifth factor also weighs in Plaintiff's favor, as the Court adopted her position on the merits. Thus, even considering the Hummell factors, attorneys' fees are appropriate.
B. Amount of Plaintiff's Fee Award
Plaintiff seeks $ 184,750 in attorneys' fees. (Reply at 12 n.6; Mot. at 3.) Plaintiff's counsel Michael Horrow, Scott Calvert, and Russell Petti each claim a billing rate of $ 700 per hour. (Mot. at 13-16.) Plaintiff's counsel Nichole Podgurski claims a rate of $ 400 per hour. (Id. at 16.) Plaintiff's counsel billed a total of 266.5 hours in this litigation. (See id. at 9; Reply at 12 n.6.) Plaintiff also seeks $ 3,659.58 in costs. (Mot. at 17.) MetLife asserts these amounts are unreasonable and requests the Court to limit any award accordingly. (Opp'n at 10-18.)
1. Reasonable Hourly Rates
To determine whether a claimed rate is reasonable, courts look to the prevailing market rate for similar services "by lawyers of reasonable comparable skill, experience, and reputation." Mardirossian v. Guardian Life Ins. Co. of Am., 457 F.Supp.2d 1038 (C.D. Cal. 2006) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ). This rate may be established by attorney declarations or prior court orders. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 947 (9th Cir. 2007) ; United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").
The Court finds the claimed hourly rates for Plaintiff's attorneys are reasonable. Plaintiff's counsel Podgurski bills $ 400 per hour. (Podgurski Decl. ¶ 11.) Podgurski graduated from Loyola Law School in *1054 2006. (Id. ¶ 3.) Since 2009, Podgurski has devoted approximately 25% of her practice to ERISA governed claims. (Id. ¶ 6.) From January 2015 to June 2018, Podgurski billed $ 350 per hour. (Id. ¶¶ 8, 11.) After making partner, Podgurski raised her rate to $ 400 per hour. (Id. ¶ 11.) Courts have approved both of these rates as reasonable. (See id. ¶¶ 10, 12; Ex. C; Ex. D.) The Court finds reasonable Podgurski's rate of $ 400 per hour. Furthermore, MetLife does not contest the reasonableness of this rate.
Plaintiff's counsel Horrow, Petti, and Calvert each claim a billing rate of $ 700 per hour. (Mot. at 13-16; see also Horrow Decl. ¶ 19; Calvert Decl. ¶¶ 16-18; Petti Decl. ¶ 22.) The Court agrees that this is a reasonable hourly rate in light of their experience. As to Horrow, he has been practicing since 1992. (Horrow Decl. ¶ 3.) He has handled ERISA matters since 1998. (Id. ¶ 7.) Horrow dedicates about 95% of his practice to insurance coverage, handling primarily claims for disability benefits. (Id. ¶ 9.) He has handled at lease 850 ERISA matters on behalf of disabled clients. (Id. ¶ 11.) Horrow attaches to his declaration orders from 2016 and 2018 approving a rate of $ 650 per hour. (See Ex. B; Ex. C.) In May 2018, Horrow increased is rate to $ 700 per hour. (Id. ¶ 19.) In November 2018, another court in this District approved this increased rate. (See Ex. D.)
As to Petti, he has been practicing since 1988. (Petti Decl. ¶ 6.) He has focused on ERISA litigation since 1996. (Id. ¶ 8.) Petti submits declarations from other attorneys supporting his requested rate of $ 700 per hour. (See Dean Decl. ¶¶ 14-15; Scheper Decl. ¶¶ 6-7; Newhouse Decl. ¶ 14.) In 2016 and 2018, courts in this District approved Petti's then-current rate of $ 650 per hour. (See Ex. B; Ex. C.) In May 2018, Petti increased his rate to $ 700 per hour. (Petti Decl. ¶ 22.) In November 2018, another court in this District approved the $ 700 per hour rate. (See Ex. D.) Furthermore, Petti has some clients who choose to pay him on an hourly basis. (Petti Decl. ¶ 24.) These clients pay him at his current rates. (Id.)
As to Calvert, he has been admitted to the California Bar since 2000. (Calvert Decl. ¶ 3.) He has spent the majority of his career in insurance practice, specifically ERISA-regulated group disability claims. (Id. ) He joined Mr. Horrow's firm in September 2018. (Id. ¶ 5.) In 2014 and 2015, courts in this District approved a $ 550 rate as reasonable. (Id. ¶¶ 13-14; see also Ex. M; Ex. N.) After 2015, insurance companies in three separate actions paid his then-current rate of $ 650 per hour without dispute and without need for fee motions. (See Calvert Decl. ¶ 15.) Calvert also attaches declarations from two attorneys with significant experience regarding ERISA-regulated employee benefit plans. (See Kantor Decl. ¶ 3; McKennon Decl. ¶ 2.) These attorneys each conclude Mr. Calvert's rate of $ 700 per hour is reasonable in light of his experience and explain why they consider this rate to be reasonable. (See Kantor Decl. ¶¶ 7, 11-12; McKennon Decl. ¶¶ 12-18.)
MetLife contends that the $ 700 per hour rate is excessive and should be reduced to $ 650 per hour for each Horrow, Calvert, and Petti. (Opp'n at 17-18.) Specifically, MetLife asserts Horrow, Petti, and Calvert have not offered evidence to suggest that the market has paid or is willing to pay $ 700 per hour for the work performed. (Id. at 17.) They further contend the declarations submitted in support of these rates are unreliable because they are from other plaintiff attorneys and, therefore, self-serving. (Id. ) MetLife also notes that Horrow and Petti raised their rates from $ 650 to $ 700 in May 2018, six months after this litigation commenced.
*1055 (Id. at 18.) Finally, MetLife contends policy considerations do not support the requested fees because ERISA was intended to provide inexpensive, expeditious resolution to disputes concerning qualifying employee benefit plans. (Id. (citation omitted).) These arguments are unavailing.
First, as to the Horrow and Petti rates, courts in this district routinely approved their $ 650 per hour rates. (See Ex. B, Ex. C.) These approvals occurred across two years. The Court finds it unreasonable to suggest that prior approvals lock-in such rates while counsel continues to build experience that increases the value of their services. Attorneys may reasonably increase their rates. Furthermore, another court in this District considering the fee increase already determined the $ 700 per hour rate was commensurate with Horrow's and Petti's experience. (See Ex. D.) This is satisfactory to establish the reasonableness of their $ 700 per hour rate. See Welch, 480 F.3d at 947. Furthermore, even though they increased their rates after this action was filed, the bulk of the efforts in this case took place after the May 2018 rate increase.
Second, the Court does not need information concerning what Horrow, Petti, and Calvert bill their non-contingency clients. The Ninth Circuit "ha[s] repeatedly held that the determination of a reasonable hourly rate 'is not made by reference to the rates actually charged the prevailing party.' " Id. at 946 (quoting Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 471 (9th Cir. 2000) ). Instead, billing rates are "established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Id. (internal quotations omitted). Plaintiff provides such evidence in the form of prior court approvals and declarations from experienced counsel. Defendant provides no evidence to contradict the reasonableness of these rates. See Phelps Dodge, 896 F.2d at 407 ("Although the defendants disagreed with this evidence, they did not support their arguments with any affidavits or evidence of their own regarding legal rates in the community.").
Third, although the Court recognizes other plaintiff attorneys may have an interest in asserting that Horrow, Petti, and Calvert reasonably claim a billing rate of $ 700 per hour, the Court is unpersuaded that such an interest renders the supporting declarations unreliable. As to Horrow and Petti, other courts have approved their previous billing rates and at least one court has approved their $ 700 per hour rate. As to Calvert, he provides evidence that four years ago his $ 550 per hour rate was approved, that in recent years insurance companies have not disputed his claimed $ 650 rate, and that other ERISA-experienced attorneys consider the requested $ 700 per hour rate as reasonable. (See Ex. M; Ex. N; Calvert Decl. ¶ 15; Kantor Decl.; McKennon Decl.) This evidence reflects reasonable rate increases over time. As such, the evidence is sufficient to establish that Calvert's requested rate is reasonable, especially where MetLife provides no contradicting evidence.
Finally, MetLife's policy argument is unpersuasive. The Court accepts that a broad purpose of ERISA is to resolve disputes like this one inexpensively and expeditiously. However, ERISA expressly provides that plaintiffs like Ms. Harlow may recover reasonable attorneys' fees if they succeed. 29 U.S.C. § 1132(g)(1). In fact, the Ninth Circuit has expressly noted that another ERISA purpose includes "protect[ing] employee rights and to secure effective access to federal courts." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984). Thus, a plaintiff's entitlement to reasonable *1056 attorneys' fees that are sufficiently supported by evidence vindicates ERISA's purpose to secure access to federal courts. The Court finds the claimed hourly rates for Horrow, Petti, Calvert, and Podgurski are reasonable. The Court will not reduce these rates.
2. Reasonable Number of Hours
Plaintiff asserts her counsel reasonably expended 266.5 hours in this litigation. (See Mot. at 9 (asserting counsel expended 239.3 hours at the time she filed her Motion); Reply at 12 n.6 (asserting counsel expended 27.2 hours preparing the Reply).) As noted above, Plaintiff may recover fees for the number of hours reasonably expended on her case. McElwaine, 176 F.3d at 1173. The Court excludes from this total time that is "excessive, redundant, or otherwise unnecessary." Van Gerwen, 214 F.3d at 1045 (internal quotation omitted).
Plaintiff asserts the 266.5 hours counsel spent on her case was reasonable. (Mot. at 9-12.) She explains this time covered a federal action proceeding through trial. (Mot. at 10.) Plaintiff further notes that counsel undertook the following tasks: claim investigation, drafting the complaint, preparing a joint 26(f) report, reviewing the Court's orders, arranging for mediation, drafting a mediation brief, discussing with MetLife whether discovery was necessary, drafting an opening trial brief, drafting a responding trial brief, responding to MetLife's evidentiary objections, reviewing MetLife's applications to file under seal, preparing a request for judicial notice, objecting to MetLife's request for judicial notice, preparing for the court trial (which the Court subsequently vacated), negotiating attorneys' fees, drafting this Motion, and maintaining regular communication with Plaintiff throughout the action. (Mot. at 11-12; Horrow Decl. ¶ 32.)
MetLife, however, asserts the total hours are excessive and unreasonable. (Opp'n at 10-17.) Specifically, MetLife asserts Plaintiff seeks recovery for duplicative work, that the time spent on the fee motion is unreasonable, and that the Court should reduce the time spent on administrative tasks. (Id. ) MetLife contends the Court should reduce the reasonable number of hours by 77.7 hours, leaving a total of 188 hours. (Id. at 18-19.)
a. Duplicative Hours
MetLife requests that the Court deduct 45.2 hours as duplicative or unreasonable. A court may reduce the number of hours awarded where counsel performs unnecessarily duplicative work, but "determining whether work is unnecessarily duplicative is no easy task." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). For example, in a case that goes on for many years, "a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research[.]" Id. Furthermore, courts are discouraged from second-guessing staffing decisions. Id. at 1114-15. Specifically, using multiple lawyers on a case is both generally permissible and quite common. Id.; Mardirossian v. Guardian Life Ins. Co. of America, 457 F.Supp.2d 1038, 1050 (C.D. Cal. 2006). Only unnecessarily duplicative work should be deducted from a fee award. Moreno, 534 F.3d at 1112.
Here, MetLife's contention that counsel seeks duplicative hours centers on staffing decisions. (See Opp'n 11-13.) MetLife takes umbrage at the fact multiple attorneys billed time for reviewing the administrative record, which the Court notes totals over 2,000 pages. (Id. at 12.) MetLife further takes issue that attorneys reviewed the file more than once each over the life of the case. (Id. ) In regards to the court trial, MetLife further asserts it was duplicative for multiple attorneys to work on submissions. (Id. ) Specifically, MetLife *1057 concends it is duplicative that Petti billed 23.16 hours on the opening brief and that Horrow and Calvert spent 4.7 and 6 hours, respectively, reviewing that brief. (Id. ) MetLife makes mirror arguments concerning the efforts on the responding trial brief and evidentiary objections. (Id. ) It is clear from the break down of time that Petti was largely responsible for drafting the trial documents and that Calvert and Horrow provided review and feedback.
MetLife is especially concerned with Plaintiff's attorneys reviewing the same documents, especially the administrative record.[2] (Opp'n at 12.) The Court will not second guess the staffing decisions on this matter. See Moreno, 534 F.3d at 1114-15. The Court fully acknowledges it should be skeptical when several lawyers were needed for a single task. Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004) ("courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do."). But this is not such a situation. Here, the effort of multiple attorneys concerning trial submissions clearly reflects a division of labor. As addressed above, Petti clearly was responsible for drafting the trial documents while Calvert and Horrow provided review. As they are also responsible for Plaintiff's claim, it is reasonable-and likely within their ethical obligations-that they review the documents filed on Plaintiff's behalf.
Furthermore, where more than one attorney works on a matter, it is necessary that more than one attorney review the record and pleadings. It is a dangerous proposition that only one attorney may properly spend time reviewing a case record, as no reasonable attorney could provide meaningful or ethical litigation support without being familiar with the critical documents. That each Horrow, Calvert, and Petti spent time familiarizing themselves with the record does not render their review unnecessarily duplicative. Additionally, the fact that each of these attorneys spent time re-reviewing the records over the life of the case is not unnecessary duplication. As is evident from their declarations, counsel in this action have undertaken hundreds of actions like this one. (See Horrow Decl.; Calvert Decl.; Petti Decl.) They cannot be expected to recall at any given time the intricacies of a 2,000 page administrative record. It is also reasonable that each attorney briefly reviewed this Court's March Order. Thus, as to review of the record and time spent on the trial submissions, any duplication was not "unnecessary."
MetLife also contends it was unnecessary to spend time preparing for the court trial because the Court vacated the hearing. (Opp'n 12-13.) This would be a strong argument if MetLife could show that counsel billed time to trial preparation after the Court vacated the trial. But MetLife makes no such showing. The Court vacated the hearing for the court trial on January 17, 2018, just six days before it was scheduled. (Dkt. No. 59.) MetLife's own exhibits show all time Plaintiff's attorneys spent in preparation for trial was billed before January 17, 2019. (Ex. 1 at 4.) The Court will not penalize Plaintiff because her counsel *1058 did not procrastinate. The Court find time spent preparing for trial was reasonable.
Finally, MetLife asserts Horrow unreasonably attributes 7.8 hours to a half-day mediation.[3] (Opp'n at 13-14.) MetLife asks the court to reduce this 7.8 hours to 4.8 hours. (Ex. 1 at 5.) The mediation was a half-day mediation. (Murray Decl. ¶ 3.) The Court agrees with MetLife that 7.8 hours appears to be excessive for a half-day mediation. Accordingly, the Court will deduct 3 hours of the time Horrow billed as excessive. At his rate of $ 700 per hour, this means the Court deducts $ 2,100 from the attorneys' fees requested.
b. Fee Motion
MetLife contends counsel's time preparing this Motion was excessive and "totally unnecessary." (Opp'n at 14-16.) It argues this Motion was not necessary and that Plaintiff's counsel spent an unreasonable amount of time on its preparation. (Id. )
First, MetLife asserts the Motion is unnecessary because it offered Plaintiff's counsel 93% of what they originally demanded. (Opp'n at 14-15 (citing Ex. 3).) In MetLife's email offer to pay 93% of the demand, it provided a brief and unsupported explanation for the basis of its counteroffer. (Ex. 3.) The email is two short paragraphs in which MetLife asserts the same arguments as the Opposition. (Id.) The email provides no citation to the record or to legal authority. (Id. ) An offer, even one that proposes 93% payment of a demand, does not render a motion for attorneys' fees unnecessary or excessive. As addressed throughout this Order, MetLife's arguments have been largely unavailing. The Court will not hamstring plaintiffs and their attorneys into accepting compromise offers by using such offers to preclude recovery of fees incurred to vindicate a plaintiff's entitlement to reasonable fees.
Second, MetLife asserts the time Plaintiff attributes to this Motion is excessive. The Court disagrees. Specifically, MetLife asserts the time spent on the fee motion should be reduced because the Motion itself and the accompanying declarations contain significant amounts of boilerplate language. (Opp'n at 15-16.) MetLife further asserts Mr. Calvert's time is improperly block-billed, requiring a reduction in reasonable hours. (Id.) MetLife seeks to reduce to 0 hours the time attributed to preparing this Motion. (Ex. 1 at 6-7.) This is an absurd request. The Court acknowledges "a reduction in hours is appropriate if the court reasonably concludes that preparation of a motion 'demanded little of counsel's time.' " Welch, 480 F.3d at 950 (quoting Webb v. Sloan, 330 F.3d 1158, 1170 (9th Cir. 2003) ). The court in Welch noted the plaintiff failed to offer evidence to undermine the conclusion that the total billing for the fee motion was excessive in light of the boilerplate language and reduced the award of counsel's time from 13 hours to 4 hours. Id. Here, Plaintiff's counsel acknowledges they used standard language and updated declarations previously used. (Reply at 7-8.) However, Plaintiff's counsel explains that the time spent preparing this Motion would have been substantially greater had they not efficiently re-used past efforts. (Id.) The Court finds reducing the number of *1059 hours in this context places plaintiff attorneys in an impossible situation. If they re-use form language and update past declarations to accrue fewer hours, they risk an award reduction due to boilerplate language arguments. However, if they start from scratch as to each motion for fees, they inefficiently run-up time. Either the opponent will pay this excess if a plaintiff's fee motion is successful or the opponent will assert that such re-generation is unreasonable given counsel's repeat handling of such issues. The Court finds Plaintiff's situation is unlike Welch because the Reply expressly acknowledges portions of the Motion and supporting declarations were "recycled" but explain that such recycling did not mean the Motion therefore demanded less of counsel's time than the 28.28 hours asserted. Furthermore, significant portions of the Motion discuss facts unique to this action and its procedural history. (See Mot.) The Court will not reduce the number of hours on the basis that the Motion also contained boilerplate language for which counsel does not attempt to inflate its time.
Finally, MetLife asserts portions of Calvert's time is block-billed, compelling a reduction of hours. (Opp'n at 16.) "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Welch, 480 F.3d at 945 n.2. Courts may reduce an award where attorneys use such a practice, as such a practice "makes it more difficult to determine how much time was spent on particular activities." Id. at 948. Any reduction on this basis should only be applied to block-billed entries and not entire fee awards. Id. MetLife does not allege which of Calvert's entries are block-billed. Based on the Court's review, it appears that only two of Calvert's time entries concerning the Motion are even potentially block-billed. (See Ex. 1 at 6-7.) In Calvert's final two entries, he describes his work as continuing to draft or finalizing the Motion and its supporting declarations and exhibits. (Id. at 7.) The Court does not find these descriptions constitute "block-billing" such that it cannot determine how much time was spent on particular activities. See Welch, 480 F.3d at 948. Drafting and finalizing the supporting declarations and exhibits were an essential aspect of Calvert completing the Motion. The Court will not penalize Plaintiff's counsel for being specific about the actions that went into completing the particular task. Accordingly, the Court will not reduce these two entries.
c. Administrative Tasks
MetLife asserts Plaintiff's counsel should not be able to bill for certain routine or administrative tasks. (Opp'n at 16-17.) First, MetLife asserts time billed concerning the two subpoenas in this action and the 1.1 hours reviewing a letter and email from Defendant regarding such subpoenas should be reduced because the discovery was withdrawn. (Id. ¶ 16.) The Court rejects this argument because the withdrawal came after the parties stipulated to a de novo standard of review. (See id.; see also Dkt. No. 35.) The Court further rejects the 1.8 hours preparing the subpoenas should be reduced because they are boilerplate. The Court acknowledges boilerplate aspects of the subpoena, however Plaintiff's counsel appropriately spent an efficient amount of time tailoring them to this action and to each Defendant. The Court finds that 1.8 hours for such effort is not unreasonable. Thus, the time spent preparing such discovery documents and responding to Defendant was not unreasonable. MetLife further asserts the stipulation as to the standard of review was duplicative. (Opp'n at 16.) However, MetLife does not argue why any duplication was unnecessary such that a fee award *1060 should be reduced. Furthermore, reviewing the time records concerning the stipulation reflects that after drafting the stipulation, it was emailed to Defense counsel, who then responded via email. (See Ex. 1 at 8.) Given that the total amount billed to this effort was only 1.3 hours, the Court is perplexed as to how such time is unreasonable. The Court is also unconvinced that Horrow's review of Podgurski's draft was unnecessarily duplicative.
Second, MetLife contends Horrow and Petti billed time on administrative tasks such as notices of association and gathering exhibits, which should not be billed at $ 700 per hour. (Opp'n at 16.) MetLife provides no explanation or citation supporting their contention that such tasks are clerical. Furthermore, exhibits supporting motions and declarations are filed with the Court, and attorneys have an ethical obligation to ensure such filings are properly submitted. The Court is not persuaded that such tasks are purely "administrative" or that the time spent on them was unreasonable. The Court will not reduce the award on this ground.
d. Tabulation of Fee Award
Based on the calculations described above, the Court reduces Plaintiff's $ 184,750 fee request by $ 2,100. This results in a lodestar amount of $ 182,650. MetLife does not identify any exceptional circumstances counseling against awarding this presumptively reasonable amount. Van Gerwen, 214 F.3d at 1045. Accordingly, $ 182,650 is a reasonable fee award.
C. Costs
Plaintiff also seeks $ 3,659.58 in litigation costs. (Mot. at 17; Reply at 12.) Plaintiff incurred the following types of cost in prosecuting her action: copying charges, postage fees, delivery fees, mediation expenses. (Mot. at 17; Horrow Costs.)
ERISA provides that the Court may allow "reasonable ... costs of action[.]" 29 U.S.C. § 1132(g)(1). The Ninth Circuit holds this provision permits courts to award only the "costs" allowed by 28 U.S.C. § 1920 and "only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821, or by similar such provisions." Agredano v. Mut. of Omaha Cos., 75 F.3d 541, 544 (9th Cir. 1996). Section 1920 permits recovery of the following:
(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursement for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
28 U.S.C. § 1920. But the Ninth Circuit also holds that in ERISA cases, "reasonable attorney's fees" include litigation expenses when it is "the prevailing practice in a given community for lawyers to bill those costs separately from their hourly rates" even if the court cannot tax those expenses as "costs" under § 1920. See Whalen v. Standard Ins. Co., 2010 WL 11518544, at *5 (C.D. Cal. Feb. 4, 2010) (quoting Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co., 460 F.3d 1253 (9th Cir. 2006) ). Other courts in this District considering the issue have adopted a similar approach. See id.; Toven v. Metropolitan Life Ins. Co., 2009 WL 578538, at *5 (C.D. Cal. March 5, 2009) ;
*1061 Mitchell v. Metropolitan Life Ins. Co., 2008 WL 1749473, at *5 (C.D. Cal. Apr. 7, 2008) ; Brown v. S. Cal. IBEW-NECA Trust Funds, 2008 WL 11338228, at *5-6 (C.D. Cal. Feb. 26, 2008).
Here, Defendant concedes that costs relating to the filing fee, service of process on each MetLife and Kaiser, certain photocopies, and subpoena fees are properly taxed as "costs" under § 1920. (Opp'n at 19.) Accordingly, the Court awards $ 1,002.74 as costs. The Court awards the remaining $ 2,656.84 in expenses for which Plaintiff seeks reimbursement as "attorney's fees" to which she is entitled. Plaintiff submits evidence that travel, courier, copying, records request, and mediation fees are typically passed on to clients. (Horrow Decl. ¶ 38.) MetLife did not present any evidence in opposition to this assertion. Accordingly, the Court GRANTS Plaintiff's requests for costs in the full amount.
IV. CONCLUSION
For the reasons above, the Court GRANTS-IN-PART Plaintiff's Motion. Plaintiff is AWARDED $ 182,650 in attorneys' fees and $ 3,659.58 in costs.[4] The June 3, 2019 hearing is VACATED.
IT IS SO ORDERED.

After reviewing the documents MetLife seeks to file under seal, they do not influence the Court's ruling on the Motion. The Application is DENIED as MOOT.

MetLife also asserts the time billed is unreasonable because it is substantially more time than MetLife counsel expended. (Opp'n at 11.) MetLife, who lost on the merits of this action, provides no authority to support the proposition that the time it spent should meaningfully guide this Court's reasonable number of hours inquiry. MetLife further fails to provide any information concerning its billing break down. The Court rejects such an argument as unpersuasive and unsupported.

MetLife also takes issue with the time Horrow spent preparing for the mediation. (Opp'n at 13-14.) It argues someone with Horrow's experience should not require so much preparation time for a mediation. (Id. ) This argument is unavailing as it asks the Court to find it was unreasonable for Horrow to spend time re-familiarizing himself with the record to prepare a mediation brief, a damage memorandum, and to prepare himself for the mediation. As addressed already, it is reasonable for an attorney to re-familiarize himself with a record. Furthermore, MetLife provides no reason for the Court to find that the time spent preparing the mediation brief or damages memorandum was excessive.

This total is a combination of "costs" taxable under 28 U.S.C. § 1920 as well as expenses ERISA equates to "attorney's fees" for purposes of a fee award. See supra Part III.C.